# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-IA-00455-SCT

*O. TUCK ADAMS, INDIVIDUALLY, AND AS*
*ADMINISTRATOR OF THE ESTATE OF MARY*
*JANE ADAMS, DECEASED*

*v.*

*BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.,*
*MICHAEL A. DORRITY, M.D., JOLEE*
*RUTHERFORD, M.D., MANDALAY RESORT*
*GROUP f/k/a CIRCUS CIRCUS ENTERPRISES,*
*INC., AND CIRCUS CIRCUS MISSISSIPPI, INC.*
*d/b/a GOLD STRIKE CASINO RESORT*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/22/2006 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SARA BAILEY RUSSO |
| | RALPH EDWIN CHAPMAN |
| | DANA J. SWAN |
| ATTORNEYS FOR APPELLEES: | WALTER ALAN DAVIS |
| | BRADLEY KEITH OVERCASH |
| | L. CARL HAGWOOD |
| | EUGENIA G. McGOWN |
| | JOHN RAMSEY McCARROLL, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 08/16/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

## FACTS AND STATEMENT OF THE CASE

¶1.     On November 12, 2004, Mary Jane Adams ("Mary Jane"), a resident of Richmond, Virginia, fell at the Goldstrike Casino ("Goldstrike") in Tunica County, Mississippi, and sustained a neck injury, severe chest wall pains, and multiple rib fractures. Mary Jane was transported to Baptist Memorial Hospital-DeSoto, ("Baptist Memorial") in DeSoto County, Mississippi. Mary Jane informed personnel at Baptist Memorial she was on Coumadin therapy, and she also was wearing a medic alert bracelet to indicate such. While at Baptist Memorial she was treated by Doctors Michael Dorrity ("Dr. Dorrity") and Jolee Rutherford ("Dr. Rutherford").

¶2.     Mary Jane was released the next day and given permission by her physicians to fly home to Richmond. The following morning, her husband attempted to rouse her, but he was unable to do so. On Mary Jane's death record, the cause of death is listed as blunt trauma to the chest suffered as the result of her fall at the Goldstrike.

¶3.     This interlocutory appeal stems from a Complaint filed by Tuck Adams ("Adams"), Mary Jane's husband, against Baptist Memorial Hospital-DeSoto, Inc.; Dr. Dorrity; Dr. Rutherford;[1] Mandalay Resort Group f/k/a Circus Circus Enterprises, Inc.; and Circus Circus Mississippi, Inc. The Complaint was filed in Tunica County. The Complaint charged Mandalay Resort Group f/k/a Circus Circus and Circus Circus Mississippi with negligence in the maintenance of their casino, the Goldstrike, in Tunica, Mississippi. The Complaint charged the medical defendants with negligence in the treatment and care of Mary Jane.

---

[1]These defendants collectively will be referred to as the "medical defendants."

¶4.    Circus Circus Mississippi d/b/a Goldstrike Casino filed its Answer.[2] Baptist Memorial filed a separate Answer claiming, *inter alia*, that venue in Tunica County was not proper as to it, and that venue was proper only in DeSoto County, where Baptist Memorial is located. Baptist Memorial later filed a separate Motion to Transfer Venue, citing Miss. Code Ann. Sect. 11-11-3(3) (Rev. 2004), and averring the acts of alleged medical negligence by the medical defendants all occurred only in DeSoto County. Drs. Dorrity and Rutherford filed a separate Answer, as well as a Motion to Transfer Venue to DeSoto County.

¶5.    Goldstrike filed a Response to and Joinder in the Motion to Transfer Venue filed by Baptist Memorial. Goldstrike asserted a *forum non conveniens* argument that it is located adjacent to DeSoto County, that many of its employees who would be witnesses in the case were residents of DeSoto County, and that venue as to the majority of the defendants was proper in DeSoto County.

¶6.    In Response to the Motions to Transfer, Adams argued that pursuant to Miss. Code Ann. Sect. 11-11-3(1)(a)(i), the action could be brought in Tunica County, where "a substantial event that caused the injury occurred." *See* Miss. Code Ann. § 11-11-3(1)(a)(I) (Rev. 2004). Adams asserted Goldstrike's failure to maintain reasonably safe premises precipitated the injury and ultimate death of his wife. Adams further argues that if other, non-

---

[2]In its Answer, Goldstrike denied that Mandalay Resort Group does business in Tunica County as the Goldstrike Casino and denied that the Circuit Court of Tunica County had jurisdiction over Mandalay Resort Group. This issue is not addressed by the Circuit Court, and in all of its pleadings, Circus Circus, Inc. refers to itself as Circus Circus, Inc. d/b/a Goldstrike.

medical defendants were being sued, subsection 1 of Miss. Code Ann. Sect. 11-11-3 would apply.

¶7.     A hearing was held on the medical defendants' Motion to Transfer Venue, as well as Goldstrike's Motion for Joinder in Baptist Memorial's Motion to Transfer Venue. The trial court correctly granted the Motion to Transfer as to the medical defendants and ordered that the action against the medical defendants be transferred to DeSoto County.  However, the trial judge denied Goldstrike's Motion. Before the trial court entered its Order, Adams filed a Motion to Reconsider and to Stay Entry of Order. Adams argued that this is a wrongful death case and that the case could not be severed pursuant to Miss. Code Ann. Sect. 11-7-13, which states, in pertinent part, "[T]here shall be but one suit for the same death which shall ensue for the benefit of all parties concerned. . . ." Adams cited Mississippi Rule of Civil Procedure 82(c) and this Court's decision in *Long v. McKinney,* 897 So. 2d 160 (Miss. 2004).

¶8.     In its Response, Baptist Memorial pleaded the facts sub judice were distinguishable from *McKinney* and further argued that if Adams's contention that the claims against the defendants should not be severed was correct, then pursuant to Miss. Code Ann. Sect. 11-11-3(3), the only permissible venue for the one suit was DeSoto County.

¶9.     The trial court affirmed its earlier decision by granting the Motion to Transfer to DeSoto County as to the medical defendants only. The trial judge again denied the joinder request of Goldstrike. The trial court "[was] cognizant that this order will in effect constitute a severance of the claims presented against the Defendants in this case."

4

¶10. Adams filed a second Motion to Reconsider, which was denied by the trial court. Adams appeals from this denial and Order Granting Transfer of Venue as to the three medical defendants. Adams presents the following issues on interlocutory appeal:

I. Whether the trial erred in severing the case?

II. Whether the trial court erred in granting the Motions to Transfer Venue?

## STANDARD OF REVIEW

¶11. The resolution of this case requires the Court to employ separate standards of review.

> "In reviewing a trial court's ruling on a motion to change venue, this Court applies the abuse of discretion standard". . . . A trial judge's ruling on such an application "will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly or properly exercised under the circumstances of the case."

*Wayne General Hospital v. Hayes,* 868 So. 2d 997, 1001 (Miss. 2004) (citing *Guice v. Miss. Life Ins. Co.,* 836 So. 2d 756, 758 (Miss. 2003)).

¶12. Additionally, the Court must interpret a statute, and "statutory interpretation is a matter of law which this Court reviews de novo." *Franklin Collection Serv., Inc. v. Kyle,* 2007 Miss. LEXIS 11, *5 (Miss. 2007) (citations omitted).

## ANALYSIS

I. **Whether the trial court erred in severing the case?**

¶13. Adams argues there is no legal basis to sever, relying on Miss. Code Ann. Sect.11-7-13 and *Long v. McKinney,* 897 So. 2d 160 (Miss. 2004). The medical defendants, as well as Goldstrike, agree the case should not be severed pursuant to Miss. Code Ann. Sect. 11-7-13. All parties are correct. An action for wrongful death cannot be severed pursuant to Miss. Code Ann. Sect. 11-7-13 and this Court's holding in *Long.* Severance of this case is

5

violative of Miss. Code Ann. Sect. 11-7-13 and would certainly not promote judicial efficiency. *See* M.R.C.P. 1.

¶14. Severance of this action is also inconsistent with Miss. Code Ann. Sect. 85-5-7 (Rev. 1999), which addresses the limitation of joint and several liability for damages caused by two or more persons; contribution between joint tortfeasors; and determination of percentage of fault. Adams correctly asserts in his brief that separate trials would create, and almost certainly would result in, inconsistent holdings, including apportionment of fault. This analysis is applicable not only in wrongful death actions, but in other suits as well, because splitting the cause of action is prohibited by prior decisions of this Court and most certainly would lead to inconsistent verdicts by the separate juries. Miss. Code Ann. Sect.11-7-13 and 85-5-7 dispassionately eliminate this conundrum. *See Alexander v. Elzie*, 621 So. 2d 909, 910 (Miss. 1992) (Mississippi is among the majority of states which do not allow splitting a cause of action).

¶15. For these reasons, the trial court erred in severing this wrongful death case.

**II.     Whether the trial court erred in granting the Motions to Transfer Venue?**

¶16. Adams asserts that while DeSoto County may also be a proper venue for this action, the action was properly brought in Tunica County and should not be transferred. The medical defendants and Goldstrike counter that the *only* permissible venue for *all* defendants is DeSoto County, pursuant to Miss. Code Ann. Sect. 11-11-3(3). The pertinent portions of Miss. Code Ann. Sect. 11-11-3 state:

> (1) (a) (i) Civil actions of which the circuit court has original jurisdiction shall be commenced in the county where the defendant resides, or, if a corporation, in the county of its principal place of business, or in the county where a

6

substantial alleged act or omission occurred or where a substantial event that caused the injury occurred. . . .

(3) Notwithstanding subsection (1) of this section, any action against a licensed physician, osteopath, dentist, nurse, nurse-practitioner, physician assistant, psychologist, pharmacist, podiatrist, optometrist, chiropractor, institution for the aged or infirm, hospital or licensed pharmacy, including any legal entity which may be liable for their acts or omissions, for malpractice, negligence, error, omission, mistake, breach of standard of care or the unauthorized rendering of professional services shall be brought only in the county in which the alleged act or omission occurred. . . .

¶17.   The medical defendants suggest that the meaning of the word "notwithstanding" is clear and therefore, subsection (3) is to control regardless of the language of subsection (1). The medical defendants further argue that since Adams concedes the alleged acts of medical negligence took place wholly in DeSoto County, utilizing "a straightforward application of Miss. Code Ann. Sect. 11-11-3(3), the only appropriate venue for claims against the medical defendants is DeSoto County."

¶18.   Initially, Adams argued venue was proper in Tunica County pursuant to M.R.C.P. 82(c) and Miss. Code Ann. Sect. 11-11-3(1)(a)(i), as an action shall be commenced *where a substantial event that caused the injury occurred. See* Miss. Code Ann. § 11-11-3(1)(a)(I) (Rev. 2004)(emphasis added). Adams asserts the injury would not have occurred and necessitated medical care but for the fall at the casino in Tunica County.

¶19.   Adams and the medical defendants argue there is a conflict between Miss. Code Ann. Sect. 11-11-3(1)(a)(i) and 11-11-3(3). However, the Legislature has furnished guidance through its "notwithstanding" language contained in Miss. Code Ann. Sect. 11-11-3(3).

¶20.   Miss. Code Ann. Sect. 11-11-3(3) states, *"Notwithstanding* subsection (1)," and this "notwithstanding" language is quite telling in determining venue for medical providers.

7

"Notwithstanding" is defined by Webster's Dictionary as "(1) In spite of; (2) Nevertheless; (3) In spite of the fact that." *See Webster's II New College Dictionary* 749 (3d 2001).

¶21.    "When construing the meaning of a statute, we must look at the words of the statute." ***Pinkton v. State,*** 481 So. 2d 306, 309 (Miss. 1985). Further, "[o]ur duty is to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case." ***Pope v. Brock,*** 912 So. 2d 935, 937 (Miss. 2005).

¶22.    The "notwithstanding" language is clear. Regardless of Goldstrike's joinder as a defendant, the only proper venue for a suit against medical providers is the county in which the alleged act or omission occurred. This Court addressed the issue of when medical providers are not found in the same county in its recent decision in ***Rose v. Bologna,*** 942 So. 2d 1287 (Miss. 2006).

¶23.    The dissent incorrectly concludes that this Court, by following the mandate of Miss. Code Ann. Sect. 11-11-3, is "creating a special class of medical defendants." The contentions advanced by the dissent reveal an aversion to the legislative act and are better suited for debate before the Legislature.

¶24.    Enacting venue statutes referencing only certain groups of defendants is not novel to this State.  We have noted:

> The first statute dealing with venue was contained in the 1807 Statutes of the Mississippi Territory. This statute provided that all civil cases shall be commenced in the circuit court of the county in which the defendant may be found or if a real action, action of ejectment, or trespass quare clausum fregit, then in the county where the cause of action arose. In addition, no free-holder of the territory could be sued out of the county of his permanent residence *unless it be one of the actions for which the statute made an exception.* The venue statute found in Hutchinson's Code of 1848, one of the first codes

8

following statehood, contains almost the identical language as that of the 1807 statute.

*Clark v. Luvel Dairy Prods., Inc*., 731 So. 2d 1098, 1105 (Miss. 1998) (emphasis added).

Venue regarding specific classes of defendants was long recognized by our previous venue statutes. Separate venue statutes were enacted for railroad, express, steamboat, power, superpower, telephone and insurance companies, executors, nonresident motorists and state boards. *See* Hemingway's 1917, § 487 (1930); Miss. Code Ann. §§ 11-11-5, -7, -13 (repealed 2002); *see also* Miss. Code Ann. §§ 11-11-9, -15 (Rev. 2004).

¶25. The dissenting opinion is structured loosely around a perceived constitutional violation which has no application to the case sub judice and was not raised by either party.[3] "This Court 'may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record.'" *Shelton v. Kindred,* 279 So. 2d 642, 644 (Miss. 1973).

¶26. Contrary to the language of the dissent, this Court firmly recognizes and accepts the responsibility of ensuring the preservation of every citizen's constitutional rights. The author of the dissent has a penchant for the repetitious citation of the same provisions of the Constitution, as evidenced by recent dissents in civil matters, wherein Miss. Const. Art. 3, Sections 24 and 25 have been cited.[4] The dissent fails to demonstrate injury to the plaintiff's

---

[3]*See* Randolph, J., specially concurring in *Caldwell v. North Miss. Med. Ctr., Inc.,* 956 So. 2d 888, *21(Miss. 2007).

[4]Including the present case and *Caldwell,* 956 So. 2d at *25 (Randolph, J., specially concurring); *see also* *Coleman v. A-Bex Corp.,* 943 So. 2d 697, 702 (Miss. 2006) (Randolph, J., not participating); *Cleveland v. Mann,* 942 So. 2d 108, 121 (Miss. 2006) (Randolph, J., joining the dissent in part).

case, as it is still pending in a court of competent jurisdiction. The plaintiff still "has a remedy by due course of the law" and has not been "debarred from prosecuting any civil cause for him[self]. . . ." *See* Miss. Const. art. 3, § 24; *see also* Miss. Const. art. 3, § 25.

¶27.    Adams additionally argues there is a conflict between Miss. Code Ann. Sect. 11-11-3(3) and Mississippi Rule of Civil Procedure 82(c), which states in pertinent part, "Where several claims or parties have been properly joined, the suit may be brought in any county in which any one of the claims could properly have been brought. . . ." M.R.C.P. 82(c).

¶28.    However, before applying M.R.C.P. 82(c), one must examine M.R.C.P. 82(b), which states, "Except as provided by this rule, venue of all actions shall be as provided by statute." Therefore, a determination as to where the action could properly have been brought circuitously leads us to the venue statute, Miss. Code Ann. Sect. 11-11-3 (Rev. 2004). The presence of medical providers in this action renders subsection (1) inapplicable, as the "notwithstanding" language of subsection (3) negates the language of subsection (1). Therefore, as subsection (3) is applicable, the only *proper* venue for this action is DeSoto County. Adams's claim that M.R.C.P. 82(c) is in conflict with the venue statute is unfounded.

## CONCLUSION

¶29.    According to Miss. Code Ann. Sect. 11-7-13, and consistent with this Court's holding in *Long,* the trial judge erred in severing this wrongful death action.

¶30.    The trial judge did not err in transferring the medical defendants to DeSoto County. However, it was error not to order Goldstrike to DeSoto County along with the medical defendants. Therefore, we reverse the trial court's severance order and its denial of

10

reconsideration, and we remand this case to the trial court with directions to transfer the entire case to the Circuit Court of DeSoto County for further proceedings consistent with this opinion.

¶31. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. DICKINSON, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ. DIAZ, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY GRAVES, J.**

**DICKINSON, JUSTICE, CONCURRING:**

¶32. Although I fully concur with Justice Randolph's majority opinion, I write separately to address two issues raised by Presiding Justice Diaz in his dissenting opinion.

¶33. First, the dissent incorrectly finds that "the majority today enforces the creation of a special class of defendants . . . ." It is the Legislature, not this Court, who enacted Section 11-7-13, which provides that there shall be but one wrongful death suit. And it was the Legislature – not this Court – who decided that a suit against a medical provider "shall be brought only in the county in which the alleged act or omission occurred." Miss. Code Ann. § 11-11-3(3)(Rev. 2004)

¶34. As members of the judiciary, we are required to follow the law as it is written – even when the written law conflicts with our personal view. I am pleased that a majority of the current Court leaves legislating to the Legislature.

¶35. Second, the dissent completely misstates the law regarding this Court's review of constitutional issues. Mississippi Rule of Appellate Procedure 44, which applies to appeals

11

before this Court, clearly requires notice to the Attorney General as a prerequisite to any challenge[5] of a statute on constitutional grounds. It is inconceivable that an attack on the constitutionality of a statute enacted by our Legislature should be defended by a private lawyer representing the partisan interests of a party in litigation, rather than the Attorney General of the State, whose duty it is to represent the State and defend its statutes. *See Capitol Stages, Inc. v. State*, 157 Miss. 576, 128 So. 759 (1930).

¶36. The dissent cites several cases for the proposition that this Court has, on occasion, found plain constitutional error which was not raised in the trial court. While this assertion is true, it is irrelevant. The cases in which this Court found plain error did not relate to any statute challenged on constitutional grounds and, therefore, there was no requirement of (or need for) notification to the Attorney General.

¶37. Finally, I find it both interesting and instructive that the dissent – after having much to say about the constitutional right of citizens to bring lawsuits[6] – provides no constitutional analysis whatsoever which supports the untenable theory that the statutes in question are unconstitutional as written or as applied. After pointing us to authority which indeed

---

[5]The dissent's reliance on the exception to the rule for "urgent action" on "patently invalid" statutes is itself so patently invalid, that it justifies little more than a parenthetical footnote response. If these statutory provisions – born among the recent "tort reform" statutes – are indeed patently invalid and unconstitutional, one wonders how and why the lawyers in this case (and every other case to come before this Court in the past few years) missed the issue and failed to brief it, relying instead on one of this Court's Justices to raise the issue sua sponte – without benefit of proper briefing by the parties or notification to the Attorney General.

[6]No Justice on this Court, to my knowledge, questions the validity of the constitutional provisions cited by the dissent. However, they simply have nothing to do with venue.

establishes the preeminence of constitutional provisions over statutes, the dissent fails to take the next crucial step of informing us how the particular statutes in question violate the constitution, and why they should be declared unconstitutional.

¶38.  Stated another way, the dissent boldly states that these statutes are unconstitutional, and we have the power to declare statutes unconstitutional, even where a constitutional issue is not raised by the parties.  The dissent fails, however, to provide any analysis which demonstrates *why* these particular statutes are unconstitutional.

¶39.  In conclusion, we are left with the reality that the parties neither raised nor briefed the constitutional issue; the Attorney General was not notified and has taken no position on the issue; and the dissent provides us no constitutional analysis.  Under such circumstances, I follow the law which, in my view, has been properly set forth by the majority.

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ., JOIN THIS OPINION.**

**DIAZ, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶40.  I agree with the majority that this case should not have been severed.  However, because the majority today enforces the creation of a special class of defendants in violation of precedent and due process, I must respectfully dissent.  In addition, I believe that fealty to the Constitution compels us to address the constitutional issues inherent in this case.

**I.  The Special Class of Defendants.**

¶41.  We have previously held that "venue is a valuable right possessed by both plaintiff *and defendant*." **Forrest County Gen. Hosp. v. Conway**, 700 So. 2d 324, 326 (Miss. 1997) (emphasis added).  In the case at hand, the injury first occurred and the cause of action first

13

accrued in Tunica County. But for the injury which was the cause of death, there would be no wrongful death action, nor would there have been any necessity for medical care.

¶42. Yet the majority, based upon a dictionary entry, creates a special class of medical defendants. This special class is judicially endowed with greater rights created solely by this Court, greater rights which are neither available to other persons or professions nor authorized by our state constitution. The special class of defendants has a "venue veto power" regardless of the nature of the action, the surrounding facts and circumstances, the extent to which the events in question actually occurred within a certain venue, or the degree of alleged culpability of the special class defendants versus other defendants. The majority reaches this conclusion regardless that the Bill of Rights of our Constitution of 1890 guarantees that "[a]ll courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." Miss. Const., art. 3, § 24. Further, "[n]o person shall be debarred from prosecuting or defending any civil cause for or against him or herself, *before any tribunal in the state*, by him or herself, or counsel, or both." Miss. Const. of 1890, art. III, § 25 (emphasis added).

¶43. The arguments proposed in the majority opinion reveal an aversion to these Constitutional rights and bedrock protections guaranteed to the citizens of the State of Mississippi, and are better suited for a political stump speech at the Neshoba County Fair. Despite repeated citations to the same provisions of the Constitution by the author of the dissent, the author of the majority opinion continues to ignore the Constitutional questions that are implicated by this case, which must be resolved. "While the legislature generally has

14

the power to enact any law it sees fit, nevertheless, it is restricted in its enactment of laws by the provisions of our State Constitution and *cannot by statutory enactment alter or nullify a clear, unambiguous mandate of the Constitution*," because "[s]uch a statute would be unconstitutional." **Saxon v. Harvey**, 223 So. 2d 620, 624 (Miss. 1969). Ultimately, no matter the rhetoric of the majority, "[t]he wisdom of the drafters of our Constitution is not subject to question by this Court, and is to be modified or altered by amendment only." **Id.** at 624. "If there exists an irreconcilable conflict . . . then the constitutional provisions must prevail." **Id.**; *see also* **Board of Trustees of State Institutions of Higher Learning v. Ray**, 809 So. 2d 627, 636 (Miss. 2002) ("The general principle followed when considering a possible conflict between the constitution and a statute is that the constitutional provision prevails"). The approach should be no different in today's case.

¶44. While in this case the "primary" defendant, Goldstrike Casino, later supported the transfer of venue to DeSoto County, one may easily imagine a scenario where a primary defendant wishes to take advantage of the venue statutes that provide suit must be filed in its county of residence. Let us imagine a person is injured in Rankin County while hunting on private property, and that they are airlifted to Hinds County for treatment of injuries. While under treatment, the person receives a minute but compensable injury as a result of medical treatment. If this hypothetical plaintiff files suit against the Rankin County property owner, under the majority's rule, the suit must be transferred to Hinds County, regardless of the Rankin County property owner's wishes, and regardless of the fact that 95% of the injury occurred and accrued in Rankin County. This is a perverse result.

15

¶45. I certainly acknowledge that because of the ambiguity created by these statutes we must proceed to "to discern and give effect to the legislative intent." *City of Natchez, Miss. v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992). I further agree with the majority that lawmakers intended to ensure that cases that primarily center upon medical malpractice claims would only be brought in the county in which the alleged act or omission occurred. Yet I remain far from convinced that in a case that does not primarily center on a medical malpractice claim the Legislature intended to achieve so harsh a result as the denial of venue rights to one group of defendants in favor of another.

¶46. Notwithstanding the majority's analysis, and in lack of a clear guidance from the Legislature, I would advance a test that would ascertain where the bulk of the action accrued or occurred. This approach to venue would balance the competing interests of venue with the intention of the Legislature.

## II. The Constitution Must Be Obeyed.

¶47. The majority winces at any mention of the Constitution in this case. However, it provides no citation beyond *Shelton* for its blanket assertion that we cannot address the constitutionality of the statute of our own accord. *Shelton* itself provides no citation for that assertion, either, because that case involved a judgment for a creditor; on appeal, the record was missing "a sworn itemized statement of appellant's account." *Shelton v. Kindred*, 279 So. 2d 642, 644 (Miss. 1973). *Shelton* has nothing to do with whether this Court can address constitutional issues *sua sponte*, but rather deals with the instances when a record is complete. *Id.* Additionally, we have noted that *Shelton* is no longer good law for the proposition its stands for, as it was "decided prior to the adoption of the Mississippi Rules

16

of Appellate Procedure in 1995 . . . ." ***Norwood v. Extension of Boundaries of City of Itta Bena***, 788 So. 2d 747, 752 (Miss. 2001).

¶48.    Moreover, when circumstances warrant, this Court has knowingly gone outside the record.  *See **Samuels v. Mladineo***, 608 So. 2d 1170, 1182 (Miss. 1992).  On motion for rehearing in ***Samuels***, we acknowledged that we had gone outside the record and declared that we would do so again should circumstances warrant; indeed, we noted that "[a]dditional authorities support our conclusion that what was done was neither novel nor beyond the scope of judicial function." ***Id.*** at 1186.

¶49.    Beyond the mere black and white pages of the record, our own rules allow for the contemplation of other issues.  Despite the majority's protests to the contrary, it is well established that this Court may  review issues on its own motion when "plain error" is noted, since "the court may, at its option, notice a plain error not identified or distinctly separate." M.R.A.P. 28(a)(3); *see **Gray v. State***, 549 So. 2d 1316, 1321 (Miss. 1989) (*citing **Johnson v. State***, 452 So. 2d 850, 853 (Miss. 1984); ***House v. State***, 445 So. 2d 815, 820 (Miss. 1984); ***Hooten v. State***, 427 So. 2d 1388 (Miss. 1983); ***Fondren v. State***, 253 Miss. 241, 175 So. 2d 628 (1965)).  "Plain error" is an error which affects the substantive rights of the parties, in this case the constitutional right of access to court and equality between all parties. *See **Bryant v. State***, 844 So. 2d 1153, 1156 (Miss. 2003) (*citing **Grubb v. State***, 584 So. 2d 786, 789 (Miss. 1991)). This rule is used "to prevent the manifest miscarriage of justice, despite failure to preserve the error." ***Id.*** (citing ***Johnson v. Fargo***, 604 So. 2d 306, 311 (Miss. 1992)).

17

¶50. The concurrence discusses M.R.A.P. 44(c), arguing that notification to the Attorney General is required or a constitutional challenge must fail. However, the language of the rule itself and the Comment to that rule make it clear that this Court has the inherent power to address such a case, since "Subsection (c) permits action to proceed in the case without notice by special order *if the court determines that urgent action is necessary or that the challenged statute, order, or directive is so patently invalid that no response need be required from the affected body.*" *Comment*, M.R.A.P. 44 (italics added). In my view, this is a arrow in the quiver of the Court which has been wholly abandoned, resulting in injustice to the parties and the citizenry of the State. Indeed, the issue of constitutionality of a statute is exactly the sort of "jurisdiction as properly belongs to a court of appeals." Miss. Const. of 1890, art. 6, § 146.

¶51. It is imperative that we remain committed to the ideal that "Constitutional provisions are generally construed to be mandatory or compulsory," and "will not be considered advisory or directory merely unless it is plainly apparent that the adopters or framers so intended it." George H. Ethridge, *Mississippi Constitutions*, at 48 (1928). The inclusion of the rights of access to court in our Bill of Rights signifies that the framers of the Constitution of 1890 did not mean for those safeguards to be treated as callously as the majority does today. The Bill of Rights in our Constitution precedes the sections creating the authority of the Legislature; the body of the executive; or the powers of the judiciary, and as we have long held, these rights are more important than any statute. *See **Saxon**, supra*.

18

¶52. The Constitution is always in force and always applicable in the law. If a statute plainly clashes with a constitutional provision, we should not hesitate to invalidate it in order to safeguard the Constitution and the rights it vests in our citizenry.

¶53. Because I cannot join the majority's creation of a special class of defendants with special rights superior to those of other Mississippians, an act which is in direct contradiction with our state constitution, I must respectfully dissent.

**GRAVES, J., JOINS THIS OPINION IN PART.**