# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-02116-SCT

*DON SAUVAGE AND GENE SAUVAGE,*
*INDIVIDUALLY AND AS PERSONAL*
*REPRESENTATIVES OF THE ESTATE OF*
*ARANKA ABADIE SAUVAGE, DECEASED*

*v.*

*MEADOWCREST LIVING CENTER, LLC., STEVE*
*YANCOVICH, ADMINISTRATOR OF*
*MEADOWCREST LIVING CENTER, LLC.,*
*TRANSITION HEALTH SERVICES OF*
*LOUISIANA, LLC., ROBERT R. BATES,*
*CORPORATE PRESIDENT OF TRANSITION*
*HEALTH SERVICES OF LOUISIANA, LLC., NEW*
*ORLEANS TOURS, INC., AND JAMES E. SMITH,*
*JR., REPRESENTATIVE FOR NEW ORLEANS*
*TOURS, INC., JOHN DOES 1-25*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2008 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | STEPHEN W. MULLINS |
| ATTORNEYS FOR APPELLEES: | COREY DONALD HINSHAW |
| | CLIFFORD B. AMMONS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 02/25/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1. Don Sauvage and Gene J. Sauvage (the Sauvages), individually, and as the personal representatives of the estate of Aranka Abadie Sauvage (Aranka), filed a wrongful-death lawsuit in the Circuit Court of Hinds County against Meadowcrest Living Center, LLC (Meadowcrest), Steve Yancovich, Transition Health Services of Louisiana, LLC, Robert Bates, New Orleans Tours, Inc., James E. Smith, Jr., and John Does 1-25. The complaint alleged that Meadowcrest was a nursing home in the City of Gretna, Louisiana, and that, on August 28, 2005, the eve of Hurricane Katrina, Meadowcrest evacuated its elderly residents to a church camp in Raymond, Mississippi. The complaint alleged that Aranka was one of the evacuated residents, and that she died on September 1, 2005, as the result of inadequate medical care at the church camp. The Sauvages filed an almost identical action in Jefferson Parish, Louisiana. The circuit court dismissed the complaint based on lack of personal jurisdiction over the defendants, or alternatively, *forum non conveniens*, and the Sauvages appeal from the dismissal.

¶2. On appeal, the Sauvages argue that the circuit court erred by dismissing the case for lack of personal jurisdiction or *forum non conveniens*. The defendants address these issues and make the additional argument that dismissal was proper because the pendency of an action is a bar to a second action involving the same parties and subject matter. We find that under our wrongful-death statute and interpretive caselaw, the Mississippi action was properly dismissed due to the pendency of the prior-filed Louisiana wrongful-death action. Miss. Code Ann. § 11-7-13 (Rev. 2004). Therefore, we affirm.

## FACTS

*A. The complaint*

¶3.　The Sauvages filed the complaint on October 3, 2007, asserting their status as Aranka's grandchildren and the personal representatives of her estate. The complaint identified the individual defendants as: Meadowcrest Living Center, LLC, a Louisiana limited-liability company doing business in Gretna in Jefferson Parish, Louisiana; Steve Yancovich, the signatory and administrator of Meadowcrest; Transition Health Services of Louisiana, LLC, a Texas limited-liability company that managed Meadowcrest Living Center; Robert R. Bates, the corporate president of Transition Health Services; New Orleans Tours, Inc., which transported the elderly residents to the church camp in Raymond, Mississippi; James E. Smith, a representative of New Orleans Tours, and John Does 1-25.

¶4.　The Sauvages averred that Aranka was a Louisiana resident at the time of her death, and that the Sauvages and all the defendants were Louisiana residents. The Sauvages claimed that on August 25, 2005, Robert Bates became aware that Hurricane Katrina was gathering strength over the Gulf of Mexico and it had the ability to impact or destroy Meadowcrest's nursing home, yet Meadowcrest made no attempt to evacuate its residents until August 28, 2005, when the hurricane was less than twenty-four hours from landfall. The Sauvages claimed that, pursuant to Meadowcrest's evacuation plan, 102 elderly, bed-ridden residents were transported in three tour buses to the United Pentecostal Church (UPC) Camp located in Raymond, Mississippi, a location which actually was in the path of Hurricane Katrina. According to the Sauvages, the UPC Camp consisted of a "large metal building with a concrete floor." Hurricane Katrina struck the area early the next day, on August 29, 2005. The Sauvages claimed that in Hurricane Katrina's wake, the UPC Camp lost electrical power, and the building in which Aranka and the others were confined became

3

"very hot, humid[,] and smelled of human waste." They claimed that Aranka and at least one other elderly resident died as a result of these conditions.

¶5.    The Sauvages asserted negligence claims against all defendants, alleging that confining Aranka to the metal building without adequate medical care proximately caused Aranka's death, and that the defendants knew or should have known that the UPC camp was unfit housing for the elderly residents. They claimed that the defendants were negligent in failing to formulate and implement a contingency plan for the evacuation, despite advance knowledge that the UPC camp was in the path of Hurricane Katrina. They claimed that the defendants' actions breached the standard of reasonable care. They further claimed New Orleans Tours was negligent in failing to ensure the residents were transported to a proper and safe location. The Sauvages also asserted breach-of-contract claims against Meadowcrest and New Orleans Tours. The Sauvages asserted that the defendants' conduct constituted gross negligence and willful and wanton disregard for Aranka's welfare, and they requested compensatory and punitive damages.

   B.  Subsequent proceedings

¶6.    On December 14, 2007, Meadowcrest, Yancovich, Transition, and Bates answered and moved to dismiss for reasons including lack of personal jurisdiction and *forum non conveniens*.[1] On January 3, 2008, they filed a separate "Motion to Dismiss for Lack of

---

[1] New Orleans Tours and James E. Smith, Jr., did not file an answer or otherwise appear in the case. The circuit court issued summonses for all defendants, but it has no record of summons returns for any defendant. Because a person named in a complaint does not become a party until served with process, New Orleans Tours and James E. Smith, Jr., are not parties remaining before the circuit court. **Stanley v. Allstate Ins. Co.**, 465 So. 2d 1023, 1025 (Miss. 1985). Defendants Meadowcrest, Yancovich, Transition, and Bates

4

Personal Jurisdiction or Based on *Forum Non Conveniens*." These defendants asserted that on January 27, 2006, the Sauvages had filed another, similar action that was pending in Jefferson Parish, Louisiana. They attached a copy of the complaint in the Jefferson Parish action, in which the Sauvages asserted wrongful-death claims against Meadowcrest and Transition based upon the same conduct described in the Mississippi complaint. They requested class-certification status, to include all Meadowcrest residents who were present on August 28, 2005, who suffered damages, including those who were evacuated and transported to Mississippi.

¶7. The defendants asserted a lack of personal jurisdiction, noting that no party to this case is a Mississippi resident and all allegedly negligent decisions concerning the evacuation occurred in Louisiana. Alternatively, the defendants argued that the case should be dismissed under the doctrine of *forum non conveniens* because Mississippi is an inconvenient forum for trial, and Jefferson Parish is the more appropriate forum.

¶8. The Sauvages filed a response, asserting that personal jurisdiction was proper under Mississippi's long-arm statute, and that Mississippi's assertion of jurisdiction over the defendants comported with due process. In a response to the defendants' rebuttal, they additionally argued that the case should not be dismissed under the doctrine of *forum non conveniens*. At the hearing on the motion to dismiss, the Sauvages stated that if the circuit

---

waived the defenses of insufficiency of service of process and insufficiency of process by omitting these defenses from their answer and motion to dismiss. Miss. R. Civ. P. 12(h)(1). Therefore, the order dismissing Meadowcrest, Yancovich, Transition, and Bates fully adjudicated the case as to all parties and it was a final, appealable judgment. Miss. R. Civ. P. 54(b), 58.

court denied the motion to dismiss and allowed the case to proceed, they would dismiss the Jefferson Parish action.

¶9. The circuit court dismissed the complaint on July 11, 2008. The circuit court found that Mississippi's long-arm jurisdiction did not extend to the defendants because "the torts alleged, which concerned lack of reasonable care as to planning and/or carrying out evacuation plans, occurred primarily in the State of Louisiana." The court further found that, even if jurisdiction were proper under the long-arm statute, the defendants lacked minimum contacts with the State of Mississippi and assertion of jurisdiction over them would be unconstitutional. Alternatively, the circuit court dismissed the action under the doctrine of *forum non conveniens* because Louisiana was a more appropriate forum. In support of this finding, the court noted that the Sauvages previously had commenced the Jefferson Parish action concerning the same set of facts, that all defendants are nonresidents of Mississippi, that Meadowcrest is a Louisiana LLC doing business in Louisiana, and that the evacuation plan was put into effect in Louisiana. The trial court denied the Sauvages' motion for reconsideration.

¶10. The Sauvages have timely appealed, arguing that the circuit court erred by dismissing their complaint.

## DISCUSSION

¶11. The parties' arguments primarily focus upon the circuit court's alternative grounds for dismissal, lack of personal jurisdiction and *forum non conveniens*. The defendants also argue that, although the circuit court did not find that the prior Louisiana lawsuit was a bar to this Mississippi lawsuit, the court correctly dismissed this lawsuit because the pendency

6

of a prior action is a bar to a second action involving the same parties and the same subject matter. Although we adopt a somewhat different analysis than that promulgated by the defendants, we find this issue to be dispositive of this appeal. Therefore, we do not discuss the issues raised by the Sauvages.

¶12. The defendants cite *Abiaca Drainage District of Leflore, Holmes & Carroll Counties v. Albert Theis & Sons, Inc.*, 185 Miss. 110, 187 So. 200, 201 (1939), in which the Court held: "[t]he pendency of a prior suit between the same litigants and involving the same subject matter constitutes a bar unless adequate relief is not attainable in the prior suit." *Abiaca Drainage* concerned competing lawsuits involving the same parties and subject matter that were filed in chancery court and in circuit court, respectively. The case of *Smith v. Holmes*, 921 So. 2d 283, 286 (Miss. 2005), states that *Abiaca* articulated the rule for priority jurisdiction between courts of concurrent jurisdiction. This rule provides that "a second action based on the same cause will generally be abated where there is a prior action pending in a court of competent jurisdiction within the same state or jurisdictional territory, between the same parties, involving the same or substantially the same subject matter and cause of action, and in which prior action the rights of the parties may be determined and adjudged." *Id.* (emphasis added) (quoting *Long v. McKinney*, 897 So. 2d 160, 172 (Miss. 2005)). "It is fundamental that a plaintiff is not authorized simply to ignore a prior action and bring a second, independent action on the same state of facts while the original action is pending." *Id.* (quoting *Lee v. Lee*, 232 So. 2d 370, 373 (Miss. 1970)).

7

¶13. In *Long*, this Court discussed the rule of priority jurisdiction in the context of

wrongful-death suits, which are governed by Mississippi Code Section 11-7-13. *Long*, 897

So. 2d at 171-73; Miss. Code Ann. § 11-7-13 (Rev. 2004). Section 11-7-13 provides:

> Whenever the death of any person or of any unborn quick child shall be
> caused by any real, wrongful or negligent act or omission, or by such unsafe
> machinery, way or appliances as would, if death had not ensued, have entitled
> the party injured or damaged thereby to maintain an action and recover
> damages in respect thereof, or whenever the death of any person or of any
> unborn quick child shall be caused by the breach of any warranty, express or
> implied, of the purity or fitness of any foods, drugs, medicines, beverages,
> tobacco or any and all other articles or commodities intended for human
> consumption, as would, had the death not ensued, have entitled the person
> injured or made ill or damaged thereby, to maintain an action and recover
> damages in respect thereof, and such deceased person shall have left a widow
> or children or both, or husband or father or mother, or sister, or brother, the
> person or corporation, or both that would have been liable if death had not
> ensued, and the representatives of such person shall be liable for damages,
> notwithstanding the death, and the fact that death was instantaneous shall in
> no case affect the right of recovery. The action for such damages may be
> brought in the name of the personal representative of the deceased person or
> unborn quick child for the benefit of all persons entitled under the law to
> recover, or by widow for the death of her husband, or by the husband for the
> death of the wife, or by the parent for the death of a child or unborn quick
> child, or in the name of a child, or in the name of a child for the death of a
> parent, or by a brother for the death of a sister, or by a sister for the death of
> a brother, or by a sister for the death of a sister, or a brother for the death of a
> brother, or all parties interested may join in the suit, and *there shall be but one
> (1) suit for the same death which shall ensue for the benefit of all parties
> concerned, but the determination of such suit shall not bar another action
> unless it be decided on its merits.* Except as otherwise provided in Section
> 11-1-69, in such action the party or parties suing shall recover such damages
> allowable by law as the jury may determine to be just, taking into
> consideration all the damages of every kind to the decedent and all damages
> of every kind to any and all parties interested in the suit.

Miss. Code Ann. § 11-7-13 (Rev. 2004) (emphasis added). In *Long*, the Court noted that the

statutory language allows but "one suit" for the same death, for the benefit of all concerned

parties. *Id.* at 171-72. The Court observed that competing wrongful-death suits usually will

8

involve the same parties and subject matter; therefore, "a logical extension of the principle of priority jurisdiction requires that all claims for the wrongful death of a person be litigated in the same suit and in the same court." *Id.* at 172. Accordingly, the Court held "that the first court to properly take jurisdiction of a wrongful-death action in our state courts shall, so long as that action is pending, have exclusive jurisdiction, and any other subsequently-filed action for the same death shall be of no effect."[2] *Id.* at 173.

¶14.   *Long* applies when two wrongful-death suits are currently pending at the time the trial court decides a motion to dismiss. *Briere v. South Cent. Reg'l Med. Ctr.*, 3 So. 3d 126, 129 (Miss. 2009). In *Briere*, the plaintiff filed a wrongful-death action against Cottonwood Manor nursing home, and then filed a second wrongful-death action against South Central Regional Medical Center (SCRMC). *Id.* at 127. SCRMC moved to dismiss on the basis that the pending action against Cottonwood barred a second wrongful-death lawsuit. *Id.* at 128. At the hearing on the motion to dismiss, the plaintiff voluntarily dismissed the suit against Cottonwood. *Id.* However, the trial court subsequently granted SCRMC's motion to dismiss the second lawsuit because it had been filed while another suit for the same death was pending. *Id.* This Court reversed the dismissal of the second suit. *Id.* at 129. We noted that under Section 11-7-13, a second wrongful-death suit is not barred if an initial action was dismissed without a decision on the merits. *Id.* We clarified *Long* and held that a second suit may not be dismissed just because, at some point, it was pending at the same time as a

---

[2] This Court also has held that Section 11-7-13 and *Long* prohibit the severance of a wrongful-death lawsuit. *Adams v. Baptist Mem'l Hosp.-Desoto, Inc.*, 965 So. 2d 652 (Miss. 2007).

9

previously-filed suit. *Id.* Because the first suit was dismissed without a decision on the merits, the second suit was the only wrongful-death suit pending when the trial court addressed SCRMC's motion to dismiss, and it was not subject to dismissal. *Id.*

¶15. As in *Long* and *Briere*, in this case, the Court is confronted with two lawsuits for the same death. But unlike in *Long* and *Briere*, the instant lawsuits were filed in two different states. Arguably, the rule articulated in *Long* that the court that entertains the first-filed action "shall have exclusive jurisdiction" applies only if the first-filed action was brought "in our state courts." *Long*, 897 So. 2d at 173. In fact, in *Brown v. Brown*, 493 So. 2d 961, 963 (Miss. 1986), this Court stated "that there is another action regarding the same subject matter pending in the courts of a sister state poses no jurisdictional obstacle to a court of this state of otherwise competent jurisdiction hearing and adjudging the matter in controversy." However, *Brown* involved competing state-court divorce proceedings, not competing wrongful-death suits. *Id.* at 962.

¶16. At the time the Sauvages filed their wrongful-death suit in Hinds County, another suit for the same death was pending in Louisiana. The Louisiana action remained pending at the time the trial court determined the motion to dismiss. Under Section 11-7-13, there shall be one suit for the same death; under *Long*, all claims must be joined in that single action. *Long*, 897 So. 2d at 174; Miss. R. Civ. P. 19; Miss. Code Ann. § 11-7-13 (Rev. 2004). These fundamental procedural rules for wrongful-death litigation in this state would be thwarted if our courts entertained a wrongful-death action in Mississippi, while a previously-filed suit for the same death was pending in another state. We hold that a wrongful-death suit filed in

10

Mississippi is subject to dismissal during the pendency of a suit for the same wrongful death in a sister state.[3]  Accordingly, we affirm the dismissal of the Sauvage's complaint.

¶17.   **AFFIRMED.**

**CARLSON, P.J., DICKINSON, RANDOLPH AND PIERCE, JJ., CONCUR. LAMAR, J., CONCURS IN RESULT ONLY.   DICKINSON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J.; GRAVES, P.J., JOINS IN PART.**

**DICKINSON, JUSTICE, SPECIALLY CONCURRING:**

¶18.   I concur with the majority opinion.  The majority correctly concludes that the Sauvages' previously filed wrongful-death suit in Louisiana requires dismissal of the suit in Mississippi.  Our wrongful-death statute provides that "there shall be but one (1) suit for the same death . . . ." Miss. Code Ann. § 11-7-13 (Rev. 2004).  See *Long v. McKinney*, 897 So. 2d 160, 171-73 (Miss. 2005)).  The fact that the plaintiffs brought the two suits in different states is of no moment.

¶19.   I write separately to provide a salve to assuage the dissent's concern that – because the plaintiffs may "be unable to recover punitive damages in Louisiana – 'adequate relief'[4] may not be obtainable by them in that state's courts . . . ."  In Mississippi, punitive damages are not considered "relief" to which a plaintiff is entitled.  In fact, our trial courts consistently inform juries that

---

[3] Our holding today rests upon the wrongful-death statute's one-suit requirement and the procedural rules this Court has developed to manage wrongful-death litigation consistent with that requirement.  This decision does not erode the general rule that a previously-filed action in a sister state is no bar to an action in Mississippi.

[4] *See generally* **Abiaca Drainage Dist. of Leflore, Holmes & Carroll Counties v. Albert Theis & Sons, Inc.**, 187 So. 200, 201 (Miss. 1939).

11

punitive damages are added damages awarded for the social value in bringing a wrongful party to account for his/her/its actions and to discourage others from acting in a similar manner. Such damages are not awarded as a matter of right and are not based on the idea of benefitting an injured party, but are instead founded on the premise of punishing the wrongdoer. The paramount purpose in awarding punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others, while the purpose of compensatory damages is to make the plaintiff whole.

Miss. Model Jury Instr. Civil § 11:15 (2009-10). Furthermore, the Mississippi Code provides:

The trier of fact shall be instructed that the primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others while the purpose of compensatory damages is to make the plaintiff whole.

Miss. Code Ann. § 11-1-65 (1)(e)(Rev. 2002).

¶20. Thus, the absence of punitive damages in Louisiana may facilitate defendants' escape from civil punishment, but it in no way deprives plaintiffs of a remedy to which they are entitled. If it did, one would wonder why the plaintiffs chose to file suit there in the first place.

**CHANDLER, J., JOINS THIS OPINION**.

**KITCHENS, JUSTICE, DISSENTING:**

¶21. I do not agree with the reasoning or the conclusion of the majority opinion, which holds that a wrongful death complaint filed in a court of competent jurisdiction in this state must be dismissed if a similar action is pending in a sister state, a holding that is at odds with this Court's prior interpretation and application of priority jurisdiction.

¶22. Each of the cases relied upon by the majority stands for the proposition that the first suit filed takes priority over any other case based on the same cause of action that is *filed in*

12

*the same jurisdiction. See, e.g.* ***Abiaca Drainage Dist. of Leflore, Holmes & Carroll Counties v. Albert Theis & Sons, Inc.***, 187 So. 200 (Miss. 1939); ***Long v. McKinney***, 897 So. 2d 160 (Miss. 2005); ***Smith v. Holmes***, 921 So. 2d 283 (Miss. 2005).  However, the majority has failed to cite authority in support of its conclusion that priority jurisdiction operates to terminate a Mississippi case which was filed subsequent to a similar or related action *in another state* that involves the same litigants.

¶23.    Other problems with the majority opinion's reasoning are manifest.  First, the rule articulated in ***Abiaca Drainage*** – that "the pendency of a prior suit between the same litigants and involving the same subject matter constitutes a bar unless adequate relief is not obtainable in the prior suit" – does not support the majority's logic, because, in the case at bar, it has not been – and, at this point, cannot be – determined whether "adequate relief is obtainable [in the Louisiana action]." ***Abiaca Drainage***, 187 So. at 201.  Given the potential that the plaintiffs will be unable to recover punitive damages in Louisiana, "adequate relief" may not be obtainable by them in that state's courts, depending, of course, on the proof that ultimately is adduced.[5] ***Id***.  The plaintiffs have sued for punitive damages in their Mississippi

---

[5] Article 3546 of the Civil Code of Louisiana provides,

> Punitive damages may not be awarded by a court of this state unless authorized: (1) by the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or (2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

La. Civ. Code Ann. art. 3546 (1994).

action. To be sure, they are a very long way from collecting punitive damages; nevertheless, Mississippi's law affords them a far better opportunity of doing so than does Louisiana's, whose law makes that possibility exceedingly remote.[6]

¶24. Second, the rule in *Abiaca Drainage* applies only to actions involving "the same litigants and involving the same subject matter." *Id*. Here, this Court is unable to determine who the parties in the Louisiana action will be at trial, because there is no indication in the record that the Louisiana court has decided whether to certify the case filed there as a class action, which, from the limited information before us, appears to be the main thrust of the Louisiana case. Of course, this constitutes a major difference in the two cases: class actions are permitted in the state courts of Louisiana, but are nonexistent in Mississippi's state courts. Thus, the parties who filed the Louisiana case eventually could become class members there, along with a multitude of other people, and not individual plaintiffs, as they will always be in the Mississippi case. It also is possible that the Louisiana court could certify a class that *excludes* the Sauvage plaintiffs. However, as it stands, the question of whether the parties at a Mississippi trial and the parties at a Louisiana trial will be the same

---

[6] While the "salve" offered by my valued friend and colleague, Justice Dickinson, does not go unappreciated, it is nevertheless incomplete in its attempted instruction, as it stops short of mentioning one of the long-established reasons that Mississippi has allowed punitive damages as a deterrent measure: "Punitive damages are punishing damages, and are *awarded to the injured party as a reward* for his public service in bringing the wrongdoer to account." *Neal v. Newburger Co.*, 123 So. 861, 863 (Miss. 1929); *see also Bankers Life and Cas. Co. v. Crenshaw*, 483 So. 2d 254, 269 (Miss. 1985) ("The basis for awarding [punitive] damages is to reward a plaintiff for public service in bringing the wrongdoer to account."). That said, the writer does understand that punitive damages are not meant to be compensation to a plaintiff.

14

is an unanswered question that must be answered before any court can determine whether the "same litigants" element is present. *Id*.

¶25.    The majority cites but one case pertaining to priority jurisdiction in the interstate setting, *Brown v. Brown*, 493 So. 2d 961, 963 (Miss. 1986), and concludes that because "*Brown* involved competing divorce proceedings, not competing wrongful-death suits," *Brown* is distinguishable and does not govern this case. Maj. Op. at ¶ 15.  With respect, this logic is beyond my comprehension; I am unable to fathom any reason why it is valid.  The holding in *Brown* – ". . . another action regarding the same subject matter pending in the courts of a sister state poses no jurisdictional obstacle to a court of this state of otherwise competent jurisdiction hearing and adjudging the matter in controversy . . ." – provides the only on-point precedent in Mississippi jurisprudence, and, thus, should be followed. *Id*. at 963 (citing *Kline v. Burke Constr. Co.*, 260 U.S. 226, 232, 43 S. Ct. 79, 81, 67 L. Ed. 226, 231 (1922); *Cuevas v. Cuevas*, 191 So. 2d 843, 847-48 (Miss. 1966); *Cox v. Cox*, 108 So. 2d 422, 424 (1959); *Ex Parte Buck*, 291 Ala. 689, 691 (1973); *Streckfus Steamers, Inc. v. Kiersky*, 163 So. 830, 835 (1935)).

¶26.    In *Crawford v. Morris Transportation, Inc.*, 990 So. 2d 162 (Miss. 2008), this Court noted,

> For priority jurisdiction to apply, the second action "should be between the same parties, seeking on the one hand, and opposing on the other, the same remedy, and should relate to the same questions."  As a general rule, the principle of priority jurisdiction does not apply where like suits are pending in both state and federal courts.  Because federal and state courts are separate jurisdictional sovereigns, "the pendency of an action in a federal court is no ground for abatement of a like suit in a state court."

15

*Id*. at 169 (internal citation omitted). In *Crawford*, a self-proclaimed "procedural quagmire" of a case, this Court held that, because the respective actions pending in the federal district court for the Northern District of Mississippi and the Circuit Court of Coahoma County "were not separate causes of actions," the principle of priority jurisdiction was inapplicable. *Id*. at 174. Thus, *Crawford* is distinguishable from the case at hand. Yet, if a federal court and a state court *in the same state* are not precluded by priority jurisdiction from going forward independently, it logically follows that priority jurisdiction should not bar a Mississippi trial of this case merely because a similar (though certainly not identical) action is pending in a sister state. *Id*. at 169.

¶27.   Moreover, Mississippi is not alone in this interpretation of priority jurisdiction. The Ohio Court of Appeals, Second District, Miami County, has observed,

> The fact that an action is pending in another state does not constitute a defense to an action between the same parties over the same cause of action in Ohio. An Ohio court's options, in this situation, are to grant a stay pending the resolution of the earlier action outside Ohio, or to maintain the action in the state. In other words, dismissal is not an option at this stage of the proceedings.

*Commercial Union Ins. Co. v. Wheeling Pittsburgh Corp*., 106 Ohio App. 3d 477 (1995); *See also*, *Buck*, 291 Ala. at 691. The Restatement of Conflicts also speaks to the general acceptance of this rule among jurisdictions. "A state may entertain an action even though an action on the same claim is pending in another state." Restatement (Second) of Conflicts § 86 (1971). "While *the pendency of a foreign action is not a bar to the maintenance of an action in the state of the forum*, it may induce the court to grant a stay of the latter action." *Id*. (Emphasis added.) This rule applies "whether the two actions are both instituted in State

16

courts or in federal courts or one in a State court and the other in a federal court," and the rule "does not result in the imposition of double liability on the defendant, since the judgment first handed down effectively bars further prosecution of the second action," whether through comity or full faith and credit. *Id*.

¶28. The foregoing authorities make it clear that the doctrine of priority jurisdiction does not preclude a Mississippi court's proceeding with this matter, as Louisiana and Mississippi are "separate jurisdictional sovereigns." *Crawford*, 990 So. 2d at 169; *Brown*, 493 So. 2d at 963. Moreover, it is evident that there are fundamental differences in the two cases.

¶29. As for the argument that the "but one (1) suit" language in the first paragraph of our wrongful death statute deprives Mississippi's courts of their right to proceed with a traditional wrongful death case when a class action involving the same parties and facts is pending in the courts of a separate jurisdictional sovereign, be it a U.S. state or a foreign country, this ignores other pertinent language in the same statute, as well as the obvious purpose of the "one (1) suit" limitation. Clearly, that language is intended to prevent multiple wrongful death beneficiaries from filing separate suits *in Mississippi courts* – the only courts over which we can exercise control – for the same decedent's alleged wrongful death.

¶30. During most of Mississippi's legal history, plaintiffs could file civil actions in the county of their residence. Thus, if a wrongful death claim occurred or accrued, in whole or in part, anywhere in Mississippi, a Mississippi resident with standing to pursue a wrongful death claim in such case could file suit in the county of his or her residence, without regard to whether the cause of action occurred or accrued in that same county, or elsewhere in the

17

state. So, if multiple siblings, living in various Mississippi counties, wished to file separate wrongful death actions for the alleged wrongful death of their mother or father in each of the siblings' respective counties of residence, as well as in a county where an alleged tortfeasor resided, and also in the county where the cause of action occurred or accrued, they could have done so, but for the "but one (1) suit" restriction.

¶31. However, if one or more of those prospective beneficiaries filed his or her suit in another sovereign jurisdiction, our wrongful death statute did not, and still does not, prohibit his filing and prosecuting an identical cause of action in Mississippi, in light of all the authorities cited above.

¶32. The "but one (1) suit" language clearly applies to Mississippi's legitimate and practical interest in providing for the filing of "but one (1) suit" *here*, not in places where we have no say-so, such as Louisiana, China, and other sovereign jurisdictions.

¶33. The "but one (1) suit" measure in our statute continues that the suit ". . . shall ensue for the *benefit of all parties* concerned. . . ," and is not a restriction on the number of suits that can be pursued in other sovereign jurisdictions, especially when such other suits seek different relief than the related or similar Mississippi wrongful death action, as here, where a class action has been filed in a jurisdiction that allows state-court class actions, which Mississippi does not.

¶34. Finally, the same lengthy sentence concludes, ". . . but the determination of such suit shall not bar another action unless it be decided on its merits." Miss. Code Ann. § 11-7-13 (Rev. 2004). In the circumstances *sub judice*, the Mississippi and Louisiana cases may coexist; and, if the Louisiana case should be "determined" by dismissal on procedural

grounds, or, if it should be dismissed voluntarily by the plaintiffs, or concluded in any other manner short of an adjudication on its merits, it is no bar to the somewhat-similar case that may proceed apace in the Circuit Court of the Second Judicial District of Hinds County, Mississippi. Since there has been no adjudication on the merits of the Louisiana action, Section 11-7-13, when read in full, provides that the Louisiana action does not preclude the case at bar from going forward in a court of this state.

¶35. The logic of the majority seemingly would prohibit a case initially filed in a court of this state, and subsequently filed in a court of another state, from going forward in a Mississippi court, relying on the "but one (1) suit" language and disregarding the fact that there is "but one (1) suit" existing within the boundaries of this state. Because I disagree with this interpretation of the wrongful death statute and the majority's application of this interpretation to the facts before us, I dissent, and would remand this matter to the Circuit Court of the Second Judicial District of Hinds County for trial on the merits.

    **WALLER, C.J., JOINS THIS OPINION. GRAVES, P.J., JOINS THIS OPINION IN PART.**