# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01788-SCT

*TYLER EDMONDS a/k/a TYLER W. EDMONDS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2015 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | VICTOR ISRAEL FLEITAS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WILSON DOUGLAS MINOR |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 06/29/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     In July 2004, an Oktibbeha County jury found Tyler Edmonds guilty of the murder of Joey Fulgham, who was his half-sister's husband.  In May 2007, the Mississippi Supreme Court reversed Edmonds's conviction and remanded the case to the Oktibbeha County Circuit Court for a new trial due to evidentiary errors.  At his new trial in 2008, a jury found Edmonds not guilty.

¶2.     The present appeal stems from Edmonds's suit against the State under the Compensation to Victims of Wrongful Conviction and Imprisonment statutes codified in

Mississippi Code Sections 11-44-1 to 11-44-15, which permit a person wrongfully convicted and imprisoned to recover $50,000 for every year of wrongful incarceration. The circuit court concluded that Edmonds was not entitled to compensation because he made a false confession to police officers regarding his involvement with the murder, which equated to a fabrication of evidence. Edmonds appeals, and we reverse the judgment and remand the case to the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶3. In 2003, Edmonds confessed that he, with the help of his half-sister Kristi Fulgham, shot Joey Fulgham. At the time, Joey was married to Kristi. Initially, Edmonds and his mother voluntarily went to the police station, and Edmonds claimed that he did not know anything about the murder. However, Edmonds's mother was removed from the room, Edmonds was informed that Kristi had implicated him in the murder, and Kristi, who was already at the police station, was brought into the room with Edmonds. She held Edmonds's hand and told him that she had told the truth and that he should tell the truth too. After his brief meeting with Kristi, Edmonds gave a confession that he and Kristi had killed Joey. Several days later, Edmonds recanted his confession and stated that Kristi had acted alone in shooting Joey.

¶4. Following trial, the jury convicted Edmonds of murder, and the court sentenced him to life in the custody of the Mississippi Department of Corrections. Edmonds appealed, and the Court of Appeals affirmed his sentence and conviction. *Edmonds v. State*, 955 So. 2d 864, 900 (¶¶ 120-1) (Miss. Ct. App. 2006). The Supreme Court granted Edmonds's petition

2

for writ of certiorari review. ***Edmonds v. State***, 955 So. 2d 787, 790 (¶ 2) (Miss. 2007). The Court concluded that Edmonds did not receive a fair trial for a variety of reasons, so the Court reversed the circuit court's and Court of Appeals' judgments and remanded the case for a new trial. ***Id.*** at 798-9 (¶¶ 29-33).

¶5.    Edmonds's second trial resulted in a not-guilty verdict. Upon the return of the not-guilty verdict, Edmonds filed the present action seeking compensation pursuant to Section 11-44-1 for the years he spent in custody. Edmonds's bench trial resulted in a determination by the circuit court that Edmonds's confession was fabricated evidence; thus, he could not recover under the Compensation to Victims of Wrongful Conviction and Imprisonment statutes. Edmonds appeals and raises the following issues:

I.    Whether the circuit court erred in concluding that Edmonds fabricated evidence.

II.    Whether the circuit court's failure to give Edmonds a fair trial at his first criminal trial was a superseding cause of Edmonds's conviction, such that the false confession was not a legal cause of his conviction.

III.    Whether the circuit court should have granted Edmonds's request to have a jury trial.

**STANDARD OF REVIEW**

¶6.    As has been explained, the present appeal stems from the circuit court's judgment following a bench trial. It is well-settled that the Court defers to the factual findings and determinations of a trial judge sitting as the finder of fact at a bench trial; therefore, we will not disturb such findings if they are supported by substantial evidence and the trial court did not abuse its discretion, was not manifestly wrong, was not clearly erroneous, and did not

3

apply an erroneous legal standard. *Covington County v. G.W.*, 767 So. 2d 187, 189 (¶ 4) (Miss. 2000) (quoting *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So. 2d 200, 204 (¶ 15) (Miss. 1998)). As is customary, the Court reviews questions of law, including statutory interpretation, de novo. *Tellus Operating Group, LLC v. Texas Petroleum Inv. Co.*, 105 So. 3d 274, 277-8 (¶ 9) (Miss. 2012) (quoting *Laurel Ford Lincoln-Mercury, Inc. v. Blakeney*, 81 So. 3d 1123, 1125 (¶ 5) (Miss. 2012)).

## ANALYSIS

¶7.    For purposes of our analysis, the first two issues raised by Edmonds can be consolidated into one issue: the appropriate interpretation and application of Section 11-44-7(1)(c), which provides that a plaintiff under the Compensation to Victims of Wrongful Conviction and Imprisonment Act ("Wrongful Conviction and Imprisonment Act") must show he did not "fabricate evidence to bring about his conviction." *See* Miss. Code Ann. § 11-48-7(1)(c) (Rev. 2012). The second primary issue before us is whether Edmonds's request for a jury trial should have been granted. On both issues, we hold in favor of Edmonds.

> **I.    Section 11-44-7(1)(c) includes an element of intent to bring about one's conviction when fabricating evidence and therefore, an issue of material fact remains as to Edmonds's intent.**

¶8.    According to Section 11-44-1, the reason for the passage of the Wrongful Conviction and Imprisonment statutes was to provide monetary compensation to "innocent persons who have been wrongly convicted of felony crimes and subsequently imprisoned" because they "have been uniquely victimized, have distinct problems reentering society, and should be

4

compensated." Miss. Code Ann. § 11-44-1 (Rev. 2012). Compensation is provided if a claimant proves by a preponderance of the evidence that "[h]e was convicted of one or more felonies and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; and . . . his judgment of conviction was reversed or vacated and . . . [i]f a new trial was ordered, he was found not guilty at the new trial . . . ." Miss. Code Ann. § 11-44-7(1)(a)(ii)(2) (Rev. 2012). Further, the claimant must prove that "[h]e did not commit the felony or felonies for which he was sentenced and which are the grounds for the complaint, or the acts or omissions for which he was sentenced did not constitute a felony." Miss. Code Ann. § 11-44-7(1)(b). Finally, and most relevant to the present case, the claimant must prove that "[h]e did not commit or suborn perjury, or fabricate evidence to bring about his conviction." Miss. Code Ann. § 11-44-7(1)(c).

¶9. The crux of Edmonds's position is that the circuit court erred in finding that his false confession prohibits him from recovery pursuant to Section 11-44-7(1)(c). In support of his position, Edmonds outlines several facts that led to his confession, which include: his young age, his desire to help his half-sister avoid the death penalty, and the police allowing his half-sister to speak to him without his mother present. Essentially, Edmonds's argument is two-fold: (1) the statute requires an element of intent to fabricate evidence, and (2) an issue of material fact exists as to the nature of Edmond's intent. The State, on the other hand, contends that the "to bring about" language is merely causative and lacks any connotation of intent. We agree with Edmonds on both points.

¶10. First, the issue hinges upon the Court's interpretation of the following language within the statute: "[The Claimant] did not . . . fabricate evidence to bring about his conviction." Miss. Code Ann. § 11-44-7(1)(c). "When interpreting a statute that is not ambiguous, this Court will apply the plain meaning of the statute." *Pitalo v. GPCH-GP, Inc.*, 933 So. 2d 927, 929 (¶ 5) (Miss. 2006). To determine the plain meaning, "we must look at the words of the statute." *Adams v. Baptist Mem'l Hosp.-DeSoto, Inc.*, 965 So. 2d 652, 656 (¶ 21) (Miss. 2007).

¶11. The word "fabricate" has no element of intent indicating ultimate purpose or motive for the fabrication embedded within its plain meaning; however, the phrase "to bring about" does. The word "to" carries many definitions, one of which is "used for expressing aim, purpose, or intention." *To*, Random House Webster's Unabridged Dictionary 1989 (2d ed. 2001). The phrase "to bring about" reflects the function of the word "to" as expressing "aim, purpose, or intention," as in "[The Claimant] did not . . . fabricate evidence [with the "aim, purpose, or intention" of bringing] about his conviction." As it means "[s]omething, esp[ecially] willful desire, that leads one to act," *Motive*, Black's Law Dictionary (10th ed. 2014), the word "motive" also would be appropriate to describe the requirement at issue. In more technical terms, the phrase "to bring about" produces an adverbial infinitive that modifies and directs the verb "fabricate." Adverbial infinitives frequently are employed to express intent or motive behind a particular action, *e.g.*, "I went to the store *to buy groceries*" (*i.e.*, I went to the store with intent, and that intent was *to buy groceries*); "He ran for office *to bring about change*" (*i.e.*, he ran for office with intent, and that intent was *to bring about*

6

*change*). Turning the statute into a question simplifies the technical understanding: Why did the claimant fabricate evidence? To bring about his conviction. In other words, the claimant fabricated evidence *in order to* bring about his conviction, which denotes intention, purpose, or motive. Moreover, no other understanding of the word "to" fits within the context of the phrase "to bring about," and, therefore, a plain reading of the statute engenders an element of intent under subsection (1)(c).

¶12. In his dissent, Justice Chamberlin eschews the analysis of the statutory language as unnecessary. Our law requires that we analyze the "words of the statute." *Adams*, 965 So. 2d at 656 (¶ 21). "The function of the Court is not to decide what a statute should provide, but to determine what it does provide." *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (¶ 7) (Miss. 2011). The simple principle that Justice Chamberlin would announce, to the effect that, "If you confess a crime, and that confession is not coerced or otherwise induced by law enforcement or some state actor, then you cannot recover under the statute," may very well be better policy. However, the statute wholly excludes any mention of state actors or law enforcement.

¶13. Presiding Justice Randolph takes the position that our interpretation is absurd because he "can fathom no one who would falsely confess to a crime with the aim, intent, or purpose of being imprisoned." We decline to attempt to divine the full range of motivations human beings might have to give false confessions to or other false evidence indicating the commission of crimes, but we disagree that our interpretation is absurd. Certainly, if people actually commit crimes motivated by a desire to be separate from their spouses, for example,

7

then a person might fabricate evidence to be convicted of a crime he or she did not commit for the same or a similar reason. Travis M. Andrews, *"Rather be in jail": 70-year-old man robs bank to get arrested and away from wife, police say*, The Washington Post (September 8, 2016). The unpredictable motivations of our fellow humans aside, our interpretation of the statute allows the hypothetical, wrongly convicted person who falsified a confession under coercion the opportunity to prove that he did not fabricate the evidence of the confession to bring about his conviction but, rather, because he was coerced. If the statutory language requires causation in fact only, as urged by Justice Beam, then even coerced false confessions would be fatal to efforts to recover.

¶14.    We further suggest that not all persons making false confessions would recover simply by claiming they had a motive other than getting themselves convicted. For a hypothetical example, if a father were to plead guilty to a crime he did not commit in order to keep his guilty child from prison, then getting convicted is the intent of the father. If such were the evidence, he would not have proven that he did not fabricate evidence to bring about his conviction, because bringing about his conviction was a necessary component of also misguidedly protecting his child. By contrast, Edmonds's testimony below was that he had no appreciation for the possibility that he would go to jail. For the above reasons, we are unpersuaded that our interpretation of the statute is absurd.

¶15.    In response to a concern raised by Justice Beam's dissent, we pause to make it clear that we agree that, in addition to the aim, intent, and purpose requirement, Section 11-44-7(1)(c) requires that the false evidence cause the conviction. It is not the Court's intent to

8

ignore that the statute plainly requires that the falsified evidence bring about the conviction. However, as the dispute between the State and Edmonds is whether Section 11-44-7(1)(c) contains a requirement that the fabrication be motivated by or intended to bring about the conviction, we address what, if anything, the language has to say on the contested issue rather than an issue as to which, as Justice Beam points out, all parties agree. We isolate nothing when we consider the Legislature's purpose in choosing the phrase "to bring about" instead of any other phrase from a range of alternative verbiage including, *e.g.*, "that brings about." Rather, we are striving, as we must, to give effect to the entire statute. *DePriest v. Barber*, 798 So. 2d 456, 458 (¶ 5) (Miss. 2001) ("The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein."). Had the Legislature intended to preclude recovery for claimants who fabricated evidence that caused their convictions no matter the reason it was fabricated, then it easily could have chosen different language. For example, the Legislature could have substituted the words "which brings" for the phrase "to bring." However, the Legislature did not so choose and we are constrained to consider the words it did employ. "The duty of this Court is to interpret the statutes as written." *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1276 (¶ 10) (Miss. 2006).

¶16. Since we hold Section 11-44-7(1)(c) does provide for an element of intent, purpose, or motive, for fabricating evidence, an issue of material fact still exists as to whether Edmonds confessed with the intent, purpose, or motive of bringing about his own conviction.

    **II.**    **Edmonds produced evidence that he confessed with the intent to help his sister and with no intention to be incarcerated.**

¶17.    In dissent, Justice Beam takes the position that no issue of material fact exists as to Edmonds's motive for bringing about his conviction.  The record demonstrates otherwise.  At the trial of the instant matter, counsel for Edmonds asked him several questions regarding his feelings for his sister in order to establish evidence of motivations other than getting himself convicted of the crime.  Edmonds proffered his testimony to the effect that, in confessing, he intended to "help and protect" his sister.  He explicitly denied that he had made the confession with the intention of going to prison.  During the trial, the following exchange took place during the direct examination of Edmonds:

> Q.    Tyler, what was your motive, your goal, your desire, in making the first statement?  What were you trying to do?
>
> A.    To protect and help my sister.
>
> Q.    Now, in your 13-year-old mind, did that seem like what you were doing?
>
> A.    At the time, yes.
>
> Q.    You're a grown man now?
>
> A.    Yes.
>
> Q.    How does it seem to you, with the benefit of the maturation as a result of age, experience, and simply enough, just the development of your brain?
>
> A.    Stupid.
>
> Q.    Was your purpose at any time in making your first statement to go to prison?
>
> A.    Absolutely not.
>
> Q.    To get sent to jail?

A.     Absolutely not.

In addition to the above-quoted testimony, Edmonds offered into evidence a handwritten letter from his sister, in which his sister entreated him to stand firm on his confession. Indeed, the trial judge noted and even, at least tacitly, found the evidence of Edmonds's intent credible when he wrote in his judgment that Edmonds's confession "was motivated by an attempt to shift at least part of the blame to himself in the mistaken belief that it would help his half-sister."

¶18.   To the extent that Justice Beam argues that there is no material issue of fact as to the whether Edmonds's false confession caused his conviction, we need not respond.  It is not pertinent to the issue of whether proof exists that, if taken in a light most favorable to Edmonds, shows that his false confession was motivated by some other goal than being convicted.  As shown above, Edmonds has produced such evidence.

### IV.     When a statute is silent regarding a plaintiff's option to a jury trial, the right shall remain available to the litigant.

¶19.   Edmonds argues that he was entitled to the jury trial he requested as opposed to the bench trial he received.  Article 3, Section 31 of the Mississippi Constitution provides that "[t]he right of trial by jury shall *remain* inviolate . . . ." (Emphasis added.)   The term "remain" has been interpreted as specifically grafting the right of trial by jury onto common-law causes of action.  *Isom v. Mississippi Cent. R. Co.*, 36 Miss. 300, 308 (Miss. 1858) ("The peculiar phraseology of [Section 31] will naturally suggest the idea, that it has reference to an existing state of the law securing this right, at the time of its adoption. It is to '*remain* inviolate.'").  In reference to the Seventh Amendment's right to a jury trial, the

11

United States Supreme Court has "understood 'suits at common law' to refer 'not merely [to] suits, which the common law recognized among its old and settled proceedings, but [to] suits *in which legal rights were to be ascertained and determined*, in contradistinction to those where equitable rights alone were recognized . . . ." ***Feltner v. Columbia Pictures Television, Inc.***, 523 U.S. 340, 348, 118 S. Ct. 1279, 1284, 140 L. Ed. 2d 438 (1998) (emphasis added).[1]

¶20.   In reliance upon the above-referenced rules, the State argues the cause of action established under the Wrongful Conviction and Imprisonment statutes is not based in common law.  The State is correct: "At common law, suits . . . against the State were not available at all, due to sovereign immunity." ***Wells by Wells v. Panola Cty. Bd. of Educ.***, 645 So. 2d 883, 898 (Miss. 1994).  However, that Edmonds's claim is created by statute rather than the common law does not alone determine whether he has a right to a jury trial. The Wrongful Conviction and Imprisonment Act is completely silent as to whether a jury trial may be had, and pursuant to the following reasoning, we hold that – in a case where the statutes creating a cause of action against the State are silent as to whether the plaintiff has a right to a jury trial – a jury trial may be had.

¶21.   Attempting to infer legislative intent, the State draws the Court's attention to Section 11-44-7(4), which says "[a] claimant may choose to pursue a claim under this chapter in lieu of pursuing a claim against the State of Mississippi or a political subdivision thereof under

---

[1]While the language from ***Feltner*** is instructive, the right to a trial by jury under the Seventh Amendment does not extend to the States through the Fourteenth Amendment. *See* ***Gasperini v. Ctr. for Humanities, Inc.***, 518 U.S. 415, 431, 116 S. Ct. 2211, 2221, 135 L. Ed. 2d 659 (1996).

the Mississippi Tort Claims Act, Section 11-46-1 *et seq.*, Mississippi Code of 1972." Using the quoted language, the State contends the Wrongful Conviction and Imprisonment Act acts as an alternative to the Mississippi Tort Claims Act, and, therefore, the Legislature intended for trials under the statute to be conducted in the same manner as trials under the Tort Claims Act. The text yields the opposite conclusion. The Tort Claims Act specifically bars jury trials: "The *judge* of the appropriate court shall hear and determine, *without a jury*, any suit filed under the provisions of this chapter." Miss. Code Ann. § 11-46-13(1) (Rev. 2012) (emphasis added). No comparable language is found in the Wrongful Conviction and Imprisonment Act, which, according to the above-quoted language, may be used in lieu, or instead, of the Tort Claims Act. *City of Natchez, Miss. v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992) ("[T]he omission of language from a similar provision on a similar subject indicates that the legislature had a different intent in enacting the provisions, which it manifested by the omission of the language.").

¶22. We return, then, to the question at hand, which is whether a plaintiff enjoys the right to a trial by jury in the context of a statutorily created cause of action against the sovereign when the pertinent statutes are silent on the issue.

¶23. In *Riverboat Corporation of Mississippi v. Harrison County Board of Supervisors*, 198 So. 3d 289, 291 (¶ 7) (Miss. 2016), the Court considered "whether there is a right to a jury trial in an appeal of a county's ad valorem tax assessment." The issue in *Riverboat* was the same as the issue Edmonds presents today: "The statute authorizing this suit . . . is silent regarding the right to a jury trial." *Id.* Edmonds's appeal is distinguishable in that tax-

13

assessment cases have had a "longstanding use of jury trials," whereas cases against the Sovereign do not have a similar history. *Id.* at 294 (¶ 14). Nevertheless, we reiterated in *Riverboat* that "[t]his Court, on prior occasion and well before the adoption of our 1890 Constitution, addressed the right to trial by jury when statutes giving rise to actions were silent as to that right." *Id.* at 291 (¶ 8). We have "emphatically declared the right to a jury trial 'is unquestionably the parties' right, and the court will not be departing from its *well established rules of practice* in granting it, *though the statute may be silent on the subject*.'" *Id.* (second emphasis added).

¶24.    *Riverboat* reflects that, when faced with a silent statute, our historic and customary proclivity has been to recognize the right to a jury trial. We do so again today. Our ancestors viewed a jury trial right as so fundamental that they included it in both our federal and state constitutions. Therefore, we hold that, in the context of a statutory claim against the Sovereign, whose provisions are silent as to whether or not the action receives a jury or not, the plaintiff continues to enjoy the right to a jury trial. To the extent that the Court of Appeals held otherwise in *Hymes v. State*, 121 So. 3d 938 (Miss. Ct. App. 2013), which also involved a claim under the Compensation to Victims of Wrongful Conviction and Imprisonment statutes, we today overrule it.

## CONCLUSION

¶25.    Pursuant to the foregoing reasoning, we reverse the judgment of the Oktibbeha County Circuit Court and remand the case for further proceedings consistent with the instant opinion.

¶26.    **REVERSED AND REMANDED.**

14

**WALLER, C.J., DICKINSON, P.J., KITCHENS AND KING, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.; BEAM AND CHAMBERLIN, JJ., JOIN IN PART. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BEAM, J.; MAXWELL AND CHAMBERLIN, JJ., JOIN IN PART. BEAM, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, P.J., MAXWELL AND CHAMBERLIN, JJ. CHAMBERLIN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., MAXWELL AND BEAM, JJ.**

**MAXWELL, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶27.    Because the majority has decided to reverse and remand this case, I agree ***Riverboat*[2]** entitles Edmonds to a jury trial on remand. But I do not join the majority's interpretation of Mississippi Code Section 11-44-7(1)(c) or find remand for a jury trial solves Edmonds's confession-based dilemma.

¶28.    Like Presiding Justice Randolph and Justice Chamberlin, I find the clear language of Section 11-44-7(1)(c) forecloses Edmonds's compensation claim based on his admittedly false confession. The trial judge believed so too. And, as Justice Beam points out, even if a jury had been seated for Edmonds's trial, the judge certainly would have directed a verdict in the State's favor because he correctly believed Edmonds's admittedly false confession prevented compensation under Mississippi's wrongful-conviction compensation law.

¶29.    For these reasons, I concur in part and dissent in part.

**RANDOLPH, P.J., JOINS THIS OPINION. BEAM AND CHAMBERLIN, JJ., JOIN THIS OPINION IN PART.**

---

[2] ***Riverboat Corp. of Miss. v. Harrison Cty. Bd. of Supervisors***, 198 So. 3d 289 (Miss. 2016).

**RANDOLPH, PRESIDING JUSTICE, DISSENTING:**

¶30.   With all due respect to my fellow justices, the majority's interpretation of the statute leads to an absurd result. I cannot fathom that a reasonable person (let alone a person with an IQ of 119) (*see* Justice Beam's Dissent at ¶ 45) would falsely[3] confess to a crime with the aim, intent, or purpose of being imprisoned. There are limitations which this Court, over the years, has established in the interpretation of our Constitution and statutes. Our law is clear. We do not ascribe an absurd result to pronouncements by the Legislature. *See* ***USF&G Co. v. Conservatorship of Melson***, 809 So. 2d 647, 660 (Miss. 2002) ("It is our duty to support a construction which would purge the legislative purpose of any invalidity, absurdity or unjust inequality."); ***Drane v. State***, 493 So. 2d 294, 298 (Miss. 1986) ("Nor will this Court impute an unjust or absurd purpose to the legislature when any other reasonable construction can save it from such an imputation.").

¶31.   Despite these truths, the majority reverses the trial-court judgment and remands this case. Since trial anew is to be had, Edmonds also must prove, by a preponderance of the

---

[3]Today's decision addresses a putative alleged "false" confession, under coercion, and not a true, voluntary confession (if the Washington Post article is to be believed) (Maj. Op. at ¶ 13), which is inapplicable to the issue *sub judice*. Edmonds, when asked by his mother, "What is the truth?" responded, "That me and Christy did it." ***Edmonds v. State***, 955 So. 2d 787, 814 (Miss. 2007) (Randolph, P.J., specially concurring). Two days later, in a phone call to Marcus Sullivan, the father of one of his friends, "[Tyler] asked had I [Sullivan] heard about Joey and I said I had. There was a pause and I asked him, [d]id you do it? He said, [y]es sir." *Id.* Whether Edmonds's confessions were true or false or made under coercion will be one of the issues for a jury to decide.

16

evidence, every element required by the Wrongful Conviction Act, including actual innocence[4] (which also was not established in the case *sub judice*).

**BEAM, J., JOINS THIS OPINION. MAXWELL AND CHAMBERLIN, JJ., JOIN THIS OPINION IN PART.**

**BEAM, JUSTICE, DISSENTING:**

¶32.     Our principal duty as Mississippi's court of last resort is to consider impartially the decisions of the courts below and rule on matters through sound reasoning and common sense.  This duty is especially rigid when we review those matters in light of any applicable statutes. As a remedy intended for a select few, the Wrongful Conviction Compensation Act was established to provide prompt assistance to the wrongfully convicted through monetary amends.  In establishing the Act, our Legislature carved out this cause to provide adequate and prompt justice and restoration to the wrongly convicted, requiring the petitioner to bear the burden of proving the elements of the Act by a preponderance of the evidence.  Miss. Code Ann. § 11-44-7 (Rev. 2013).  On appeal, it becomes "[o]ur duty [] to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case." *Pope v. Brock*, 912 So.  2d 935, 937 (Miss.  2005).  In so doing, we cannot throw common sense to the wind.  Instead, we must use the established laws and years of precedent, coupled with the Court's wisdom and reason to determine the legislative intent behind the elements of the Act.

¶33.     The remedy provided by the Wrongful Conviction Compensation Act is unique in that it recognizes the need to redress the injuries suffered by innocent individuals languishing in

---

[4]*See* Miss. Code Ann. § 11-44-7(1)(b) (Rev. 2012).

prison. Throughout the country, states have established similar acts providing for compensation to factually innocent people who have been wrongfully convicted. Mississippi, like our sister states, established the Wrongful Conviction Compensation Act with the intent to remove some of the financial obstacles incurred by the factually innocent and ease their transition back into society. Miss. Code Ann. § 11-44-1 (Rev. 2012). To that end, when strictly construed, the Act was intended to apply to a minority of select cases. Because I find that Edmonds failed to meet the specific criteria to prove he was entitled to compensation through the Act, and that no genuine issue of material fact exists as to his intent to bring about his conviction under the statute, I respectfully dissent.

I. **While Mississippi Code Section 11-44-7(1)(c) includes an element of intent as it relates to the fabrication of evidence, the Act does not provide for an element of intent as to a claimant's effort to "bring about his conviction."**

¶34. The majority outlines a linguistic argument for the interpretation of a specific portion of the statute in question. However, I find that this analysis is flawed in two distinct areas: the argument ignores the intent requirement found in the element of fabrication and it implies that the clause "to bring about his conviction" lacks causation. This labored description of the statutory language results in a technical explanation of what the author views as the overarching question at hand: why did the claimant fabricate evidence? This question leads to several responses, all with one common theme: to protect his sister Kristi. The majority concludes that this denotes intent, and as a result, an issue of material fact exists as to Edmonds's intent (or lack of intent) to bring about his conviction through the falsified confession. Reviewing the majority opinion, a reader would infer that the circuit court failed

18

to consider Edmonds's reason behind the initial confession–most notably questioning why Edmonds would confess if he did not commit the crime. Resultantly, the majority would have the Court remand the question to the circuit court for resolution on that issue. But, because the circuit court already reviewed and answered the question at its bench trial on the matter–directly addressing Edmonds's reason and motive behind his actions–I see no purpose in remanding the cause.

### A.     *Intent to Fabricate*

¶35.    The majority defines the statute's pertinent language to provide the Court with a "plain reading" of the law. Following this suggestion, if we divide the applicable section of the statute into two elements, it appears that the argument the majority makes for Edmonds is that intent exists in both parts. In the first part, the statute provides that "[h]e did not . . . fabricate evidence." Miss. Code Ann. § 11-44-7(1)(c) (Rev. 2012). There, the section plainly requires an intent to fabricate–an interpretation to which the circuit court and the parties agreed. A key component of the proceedings under Section 11-44-7 is the plaintiff's burden to prove the elements under the statute before the court can enter a judgment in his favor. Miss. Code Ann. § 11-44-7(1). Importantly, this required that Edmonds prove "a negative" and show by a preponderance of the evidence that he did not invent or concoct a false confession. In an effort to meet this burden, Edmonds argued that, although he falsified the confession which lead to the jury's conviction, he lacked the requisite intent to fabricate that evidence under the statute. He then framed his argument to show that he was "pressured

19

to give a false confession" by both his sister and law-enforcement officials, and that this confession was not a free and deliberate decision on his part.

¶36.    Counsel for Edmonds urged the lower court to recognize that, because fabrication requires some type of intent to mislead, and because Edmonds's only motive was to protect his sister, he in no way intended his statement to bring about his conviction. His only aim was to protect Kristi. His attorneys claimed that, under these circumstances, Edmonds's *motivation* to fabricate should serve as an exception under the statute, overriding any intent to deceive. However, throughout the trial, the circuit judge halted questioning and arguments to rule on the admissibility of evidence and to delineate between the issues of *motive* to fabricate and *intent* to fabricate. On the subject, the trial court held that, while the fabrication requirement included an element of intent, the plaintiff's *motivation* behind his fabrication was not relevant. According to the court, while "fabricate" may embrace an element of *intent*, it does not involve an element of *motive*. The court ruled that, although Edmonds advocated a coercion exception to the statute, his *motive* in making the confession was not relevant for the purpose of the trial, noting that "by the common definition of the word [fabricate], it appears that there was a false confession made."

¶37.    Ultimately, the circuit court found that Edmonds had failed to prove that he lacked any *intent* to fabricate evidence. Recognizing that our courts "do not engage in statutory interpretation if a statute is plain and unambiguous," the judge determined that Edmonds's attempt to illustrate the formation of *motive* through coercion read more into the statute than the Legislature intended. ***Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Mississippi Div. of***

20

*Medicaid*, 21 So. 3d 600, 607 (Miss. 2009). Because our "[c]ourts have a duty to give statutes a practical application consistent with their wording," the judge properly dismissed Edmonds's suggestion that a coercion-based exception exists in the statute. *Marx v. Broom*, 632 So. 2d 1315, 1318 (Miss. 1994). I find no error in the judge's interpretation of the first part of the statute or his eventual ruling that Edmonds had failed to satisfy his burden to prove that he did not fabricate evidence through the falsified confession.

### B. *Intent to Bring About, Cause, or Contribute*

¶38. The latter part of the pertinent subsection requires that the claimant "did not . . . fabricate evidence *to bring about his conviction*." Miss. Code Ann. § 11-44-7 (emphasis added). Throughout its analysis, the majority fails to find that the phrase "to bring about his conviction" plainly indicates an element of causation. Instead, it suggests that the language creates a factual question as to the intent to be incarcerated. Ultimately, the function of the Court is to determine what the written language of the statute provides. *Lawson v. Honeywell Int'l, Inc*., 75 So. 3d 1024, 1027 (Miss. 2011) (citing *Russell v. State*, 231 Miss. 176, 94 So. 2d 916, 917 (1957)). However, "[i]f the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Id*. (citing *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980)); *see also Gilmer v. State*, 955 So. 2d 829, 833 (Miss. 2007). Here, we must not broaden or restrict legislative acts; rather, we must give effect to the intent of the Legislature through the plain meaning of the statutes. *Id*. Therefore, I cannot agree with the majority that this statute requires such an elaborate

21

dissection, as the words of the Act present clear requirements for a claimant's burden of proof.

¶39.    In both this appeal and at trial, Edmonds argued that an issue of material fact exists as to his reason for fabricating the confession.  As discussed above, he claims that, because he was coerced to confess by a host of outside forces, the courts should create an exception to the statute for those who confess without "free and deliberate intention."  But the majority focuses its attention on the claimant's failure to fabricate evidence with the "aim, purpose, or intention of bringing about his conviction."  Unlike the majority, I fail to see where an issue of fact exists.  I think the better question to be addressed is: if such a claimant, of a sound and willing mind, made a false confession under these circumstances without the "aim, purpose, or intention of bringing about his conviction," what other outcome might he think was possible?  Are we to suggest that, although no one authoritatively told him that his youthfulness or age did not make him immune from any punishment, his naivete is an adequate excuse and he is free to receive compensation from the State for a product of his own error?  I think not.

¶40.    In its ruling, the circuit court addressed the need for the false confession to bring about the conviction by labeling it as "causation."  There, the court determined that the plaintiff's alleged false confession *caused or contributed* to his conviction at his first trial. During the civil trial, the State argued that Edmonds's criminal conviction was a direct result of his confession: without the confession, the jury in the first criminal trial had no other evidence upon which to convict.  Counsel for Edmonds, however, focused on the reasons

22

behind his fabrication, creating a narrative about his motive rather than his intent. Edmonds argued that, under Kristi's coercion, he was focused on shifting blame for the murder off his sister, to himself. The court again ruled that motive was not an element of the statute, and any arguments regarding his reasons to falsify the confession were irrelevant. Edmonds then failed to present any other arguments that he did not falsify his confession "to bring about his conviction." As a result, the court ruled that Edmonds simply had failed to support his burden to show that his conviction was not proximately caused or contributed to by his confession.

¶41. The majority holds that intent to "bring about" and intent to "cause or contribute" are different concepts under the law. I disagree. The Wrongful Conviction Compensation Act plainly requires that a plaintiff show that "[h]e did not . . . fabricate evidence to bring about his conviction." Miss. Code Ann. § 11-44-7(1)(c). Therein, the language creates an element of intent, which serves as the causal factor leading to the eventual effect of the plaintiff's decision. More simply stated, the fabrication of evidence–the cause–brought about the conviction–the effect.

¶42. Though the majority makes a convincing argument that Edmonds may have lacked the requisite intent to be incarcerated, the statute plainly requires intent only as it relates to fabrication. A party's desired outcome upon fabrication is irrelevant: whether a defendant intended to be incarcerated, fined, or to evade penalty altogether was not the Legislature's concern when it drafted the Act. Rather, the clear and unambiguous terms under the statute require that the fabricated evidence lead to a conviction. It matters not that the conviction

included jail time, community service, or a fine, because the language at the end of the statute merely describes the effect of the plaintiff's actions in fabricating evidence. As with any crime, conviction was the natural and probable consequence of Edmonds's false confession. Therefore, while intent remains a crucial part of this statute, I find that it ends at Edmonds's decision to fabricate evidence.

¶43. Having determined that "to bring about" involves an element of causation, my analysis turns to the trial court's findings to address whether an issue of material fact exists. A reading of the trial transcript clearly reveals one does not. Repeatedly throughout the trial, the court and the parties discussed the causation requirement and whether the fabrication brought about the conviction. Specifically, counsel for the plaintiff explained that "the parties are in agreement . . . that the legislature engrafted a causation requirement on the issue of fabrication, which is to say if the fabrication brought about the conviction." The court then explained that "the court's view is that if the fabrication of the evidence contributed to the conviction, then in that event it would bar the plaintiff from recovery in this case . . . . So the opinion of the court is, unless you can quote me some authority different . . . to present its . . . defense of fabrication [the State] would need only to show that [the fabrication] caused or contributed to [the conviction]." Moreover, the circuit court provided both parties assistance, instructing Edmonds's attorney that he needed "to persuade the court that his . . . conviction was not proximately caused or contributed to by the confession," while the State need show only that Edmonds "fabricated evidence which caused or contributed to his being found guilty in the first trial."

¶44.    In discussing the testimony and evidence proffered by the parties, the lower court questioned the attorneys at length to ensure all arguments and elements regarding causation were submitted to the court before the trial ceased.  With the court's questions directed to the State, the following discourse took place between the judge and the parties:

> BY THE COURT: The evidence that I've seen that you produced in support of that theory is that there was no scientific or physical evidence or any eyewitness testimony as to his guilt.
>
> BY THE STATE: Yeah, the –
>
> BY THE COURT: So basically his finding of guilty came on the – based on the confession that he made?
>
> BY THE STATE: The only direct evidence against him was that – his own creation.  His own fabrication.
>
> BY THE COURT:  But as far as his participation in it, there was nothing other than his confession. Am I correct?
>
> BY THE STATE: That is correct, Your  Honor. Yes, that is correct.
>
> BY THE COURT: Am I correct?
>
> BY COUNSEL FOR EDMONDS: Yes, Your Honor.

The record makes it clear that the court was diligent in its role as the factfinder.  The judge asked several specific questions of the parties, reviewed testimony and record evidence, and made a judgment based on the requirements of the statute.  Substantially supported and without error, the court found that Edmonds had failed to prove by a preponderance of evidence that he did not fabricate evidence to bring about his conviction.

¶45.    Assuming for a moment that the majority is correct in its finding that intent through "aim or purpose" is crucial to the second half of Section 11-44-7(1)(c), I nevertheless find

25

no question of fact as to whether Edmonds intended his false confession to bring about his conviction. The facts as presented to the court clearly indicated that, even at thirteen years old, Edmonds was able to understand the gravity of the situation before him. Testimony showed he was a bright young man. His mother testified that he had an IQ of 119, which denotes above-average or superior intelligence. He was in the gifted program at school and maintained above-average reading and comprehension skills. Although his sister may have convinced him that his status as a minor provided a level of protection from eventual punishment, Tyler testified at the first trial, "I would say we did it together so that way it would be helping Kristi, but *I was kind of scared about getting in trouble too. . . .*"

¶46.    The most pivotal indication of his intent (aim or purpose), though, is found in his confession to his neighbor, Marcus Sullivan. Edmonds made his first confession to police on Sunday, after which he was arrested and then booked into the jail. By Wednesday, he was still in jail and attempting to get in touch with his mother and grandmother. After several attempts, he called Marcus Sullivan in hopes that he would pass along a message to his mother. Sullivan testified in the first trial regarding this call, explaining that "[Edmonds] asked had I heard about Joey, and I said I had. There was a pause and I asked him, did you do it? He said, 'Yes, sir.'"

¶47.    At this point, if Edmonds lacked the requisite intent, aim, or purpose to bring about his conviction through the false confession, his presence in jail and his impending arraignment would serve as clear notice that his youth was not going to save him from trial or a possible conviction. As a minor of above-average intelligence, with gifted levels of

26

reading and comprehension skills, if he did not intend to "shift the blame" from his sister by confessing to a crime and then being convicted, why would he continue to confess with his potential punishment so glaringly obvious? He would not. Whether that conviction amounted to incarceration, work-release, or a fine, Edmonds displayed time and again that he comprehended the gravity of the situation.[5] With no argument or evidence presented to the contrary, the judge recognized this apparent understanding and ruled accordingly.

¶48. Related to this decision is the concern that publishing the majority's opinion will misconstrue an unambiguous statute and set a dangerous precedent for future claims under the Wrongful Conviction Compensation Act. At issue in the criminal trials and the civil matter before us was Edmonds's claim that several factors created an environment of coercion and led to his choice to fabricate the confession. He asserted that he confessed only to save his sister. Throughout his testimony in the first trial,[6] Edmonds explained that his sister had assured him that his status as a minor would protect him from punishment, and that by sharing the blame, he would be able to help her escape the death penalty. However, he also indicated a concern for his own shelter from the authorities if his youthfulness did not, in fact, shield him. Through his testimony and his call to Marcus Sullivan, Edmonds

---

[5] The majority quotes an important part of Edmonds's testimony in which he notes that his intent was not to "go to prison" or to "get sent to jail." (Maj. Op. ¶ 17). While Edmonds may not have sought to protect Kristi by being incarcerated himself, his remaining testimony and previous actions clearly indicate that he thought his "conviction" may have led to other punishments, which (in his mind) may not have been serving jail or prison time. His perception of what sentences may have resulted is not relevant, however, as his conviction and eventual sentence are two separate matters.

[6] The transcript from the first trial was submitted by Edmonds as evidence of the pressure his sister applied to encourage him to confess to the murder.

27

indicated that he was actively trying to protect Kristi, but that he also was aware of the very real possibility that he too would be punished.

¶49.     "The duty of this Court is to interpret the statutes as written.  It is not the duty of this Court to add language where we see fit. '[O]ur primary objective when construing statutes is to adopt that interpretation which will meet the true meaning of the Legislature.'" ***Scaggs v. GPCH GP, Inc.***, 931 So.  2d 1274, 1276 (Miss. 2006) (quoting ***Stockstill v. State***, 854 So. 2d 1017, 1022–23 (Miss. 2003)).  In doing so, we must "interpret statutes consistent with reason and common sense," applying the most rational meaning of the words.  ***Dulaney v. Nat'l Pizza Co.***, 733 So.  2d 301, 305 (Miss.  Ct. App. 1998).  "Furthermore, '[c]ourts should avoid constructions which will render legislation absurd.  Rather, statutes must be interpreted in such a manner as to render their meaning rational, sensible, and logical.'" ***In re Whitaker Constr. Co., Inc.***, 411 F.3d 197, 205 (C.A. 5 (La.) 2005) (quoting ***State Through Dep't of Public Safety and Corr., Office of State***, 655 So. 2d 292, 302 (La. 1995)).

¶50.     Drawing on the Court's judicial experience and common sense, no rational reading of the Wrongful Conviction Compensation Act creates an inference that the Legislature intended a third-party, coercion-based exception to apply.  Nor can it be said that the Legislature embedded an exception for those convicted by acts of their own error to receive compensation when they never intended "to go to jail."  Such interpretations border on absurdity and cannot be supported.  *See*  ***Quitman Cty v. Turner***, 18 So. 2d 122, 124 (Miss. 1944) (citing ***Robertson v. Texas Oil Co.***, 106 So. 449 (Miss. 1925)).  Where it is evident that the Legislature aimed only to compensate the factually innocent when uniquely

28

victimized through an erroneous incarceration, we must enforce that purpose and not read into the statute more than the drafters intended. "Legislators must be presumed to be reasonable and sane men, 'and to intend the natural, direct, and probable consequences of their acts, that these shall not be absurdly or unreasonably construed, and therefore that they intend to avoid absurdities and nonsense.'" *Kennington v. Hemingway*, 101 Miss. 259, 57 So. 809, 810 (1912) (quoting 4 Hughes, *Grounds and Rudiments of the Law*, 1104 (1908)). Plainly stated: statues are to be interpreted logically, with the most reasonable interpretation applied. Considering the issue at hand, under what circumstances would safeguards of this statute apply if they did not apply here?

¶51. Although the majority is not ruling in favor of Edmonds by remanding the cause for a finding of fact, it indicates that the Court would consider affirming a judgment in favor of a claimant who had a "good reason" to lie about his involvement in a crime, only to be exonerated and then sue the State for convicting him based on that same false confession. This ruling would go too far, while twisting the words behind the statue. Those who drafted the Act did not allow for motive in the statute as a consideration for compensation because a claimant's motive is not relevant. Likewise, the statute places no importance on the reason for fabrication. It requires only that evidence was not fabricated in an effort to cause or contribute to the claimant's conviction. Therefore, I suggest the Court reflect on the words of the statute and consider the likelihood that the language "to bring about" is causative in nature and does not require simply that a claimant *intended* to be incarcerated.

## II.     The plaintiff was not entitled to a jury trial.

29

¶52.    I stand by the principle plainly articulated in our state Constitution that "the right of trial by jury shall remain inviolate." Miss. Const. art. 3, § 31.  However, having found no question of material fact exits in the matter, I do not think this case merits reversal and remand for a trial by jury.

¶53.    In its opinion, the majority cites several cases acknowledging that, when faced with a statute silent on the issue, this Court customarily has recognized the right to a jury trial. But because the circuit court judge properly ruled on the matter, determining that the parties had agreed on the facts at issue and the only question remaining was an interpretation of law, no rational jury could have found that Edmonds was entitled to compensation through the Act.  With the facts established and the law defined, the request for a jury becomes inconsequential.

¶54.    Assuming *arguendo* that the circuit judge erred in denying Edmonds the right to a jury, his decision is of no consequence to resolution of the matter and can be viewed as nothing more than harmless.  For the sake of discussion, to warrant reversal, the judge's decision to deprive Edmonds of a jury must have "affect[ed] the final result of the case and work[ed] adversely to a substantial right of the party assigning it." ***Bay Point Props., Inc. v. Mississippi Transp. Comm'n***, 201 So. 3d 1046, 1056 (Miss. 2016) (citing ***Catholic Diocese of Natchez–Jackson v. Jaquith***, 224 So. 2d 216, 221 (Miss. 1969)). *See also* ***Gray v. State***, 799 So. 2d 53, 61 (Miss. 2001).  Here, it is clear that if the parties had presented their case before a jury, at the conclusion of proof and upon proper motion, the judge would have arrived at the same conclusion, thereafter granting the State's inevitable motion for

directed verdict. As discussed *supra*, the lower court held that, while the fabrication requirement in the statute involved an element of intent, the plaintiff's *motivation* behind his fabrication was not relevant. Both parties agreed that, by the common definition of the word "fabricate," the false confession was an obvious fabrication of evidence. The discussion leading to this agreement served as the only portion of the hearing which focused on disputed issues of fact, leaving no factual questions to be answered thereafter.

¶55. Moving on to the second part of the statute, attorneys for both the plaintiff and the State agreed as a matter of fact that, during the plaintiff's first trial, only the plaintiff's confession linked him to any participation in the killing. However, the parties differed on their interpretation of the law and whether the statute required that the false confession caused or contributed to his conviction. While counsel for Edmonds argued that his motivation to fabricate was an important factor for the court to consider, the judge reiterated that motivation was not a material element of the statute. The State then argued that the element in question was causative in nature and required that Edmonds prove that his confession did not cause him to be convicted (i.e., but for the admission of the fabricated evidence, he would not have been convicted). Having ruled that Edmonds's interpretation of the statute was erroneous and that he presented no other arguments to the contrary, the judge found that the plaintiff's confession unquestionably caused or contributed to his conviction at his first trial.

¶56. Just after counsel for Edmonds concluded its case-in-chief, the representative for the State remarked that "[n]ormally I would have a motion, Your Honor, but this being nonjury,

I will not." Here, the defense clearly provided that its intent–had there been a jury trial–would be to make a Rule 50 motion for directed verdict at this point. *See* M.R.C.P. 50. Though, because the judge was to rule directly on the case with or without the presentation of evidence by the State, the representative opted to proffer several trial-testimony transcripts for the court's review prior to its ruling. The brief introduction of these transcripts into evidence concluded the State's presentation, after which it rested its case.

¶57.    A review of the hearing and the evidence submitted provides that, with or without a jury, the matter would conclude with the same result: in either scenario, Tyler Edmonds fails–as a matter of law–to support his burden to show that his fabrication of evidence was not in an effort to bring about his conviction. As we have said before, "an error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no [other] verdict . . . ." ***Gray v. State***, 799 So. 2d 53, 61 (Miss. 2001) (citing ***Forrest v. State***, 335 So. 2d 900, 903 (Miss. 1976)). Because Edmonds failed to meet his burden and the circuit judge properly would have granted the State's motion for directed verdict, his decision to conduct a bench trial is of no consequence. Accordingly, I find that if the circuit judge erred in requiring a bench trial on the matter, that error was nothing more than harmless and his decision should stand.

¶58.    Therefore, I respectfully dissent with the majority opinion and would affirm the circuit court's ruling based on the reasoning and caselaw outlined above.

**RANDOLPH, P.J., MAXWELL AND CHAMBERLIN, JJ., JOIN THIS OPINION IN PART.**

**CHAMBERLIN, JUSTICE, DISSENTING:**

¶59. I dissent. However, because I feel the opinions have overly complicated the issue, I write separately. Do not misunderstand, I enjoy diagramming and parsing sentences as much as the next person.[7] In this case, it is just not necessary. The principle that controls in this case is simple. If you confess to a crime, and that confession is not coerced or otherwise induced by law enforcement or some state actor, then you cannot recover under the statute. This is the exact situation that the language "fabricate evidence to bring about his conviction" is meant to prevent.

¶60. To be clear, a confession that is coerced by law enforcement or some state actor would not prohibit a cause of action under the statute. That is because, in such a scenario, the State would be guilty of some type of wrongdoing. In Edmonds's case, the State has done nothing wrong and logic would dictate it should not be answerable to Edmonds.

¶61. To hold otherwise basically gives the phrase "fabricate evidence to bring about his conviction" no meaning. There is always an ulterior motive other than being convicted. It does not take much of an imagination to think of egregious results that can occur under the majority's opinion.

¶62. To conclude, this is the exact case the language "fabricate evidence to bring about his conviction" is meant to prohibit, and therefore, I dissent.

**RANDOLPH, P.J., MAXWELL AND BEAM, JJ., JOIN THIS OPINION.**

---

[7] Sarcasm is "the use of words that mean the opposite of what you really want to say." *Sarcasm*, Merriam-Webster's Dictionary.